739 A.2d 1039

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Arnold HOLLOWAY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 25, 1999.

Decided Oct. 1, 1999.

Reargument Denied Nov. 30, 1999.

Robert Brett Dunham, Philadelphia, for appellant.

Catherine Marshall, Philadelphia, for appellee.

Robert A. Graci, Harrisburg, for Office of Attorney General.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

Arnold L. Holloway (Appellant) appeals from the Order of the Court of Common Pleas of Philadelphia County (PCRA Court) denying his Petition for Relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541, et seq. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Appellant was involved in a drug sales conspiracy with Shirley "Bones" Baker (Baker), Danny Freeman (Freeman), and Richard Caldwell (Caldwell), all of whom sold heroin for Leroy "Bubbles" Johnson (Johnson). Appellant was in charge of obtaining the heroin from Johnson and supplying it to Freeman, Baker, and Caldwell for street sales. In May of 1980, Johnson informed his associates that he wanted Caldwell killed because Caldwell owed him money and owed money to a rival drug dealer with whom Johnson wanted to do business.

At about midnight on the night of May 16, 1980, Baker was selling heroin in a bar at 7th and Allegheny streets in North

Philadelphia. Baker later met Johnson, Freeman, and Appellant at her apartment, where Freeman and Appellant asked Johnson if they could use his van. Johnson said that they could, and told them that Caldwell was already in the van and Appellant should "get on his job." Appellant went to his apartment and got his shotgun, which Freeman placed down his pant leg.

Appellant and Freeman then entered Johnson's van and tied up Caldwell. They drove to Third and Sedgley Streets in Philadelphia, where Appellant and Freeman pushed Caldwell from the van. They wrapped a trench coat belt around Caldwell's neck and each pulled one end of the belt, thereby choking Caldwell. Appellant placed the shotgun to Caldwell's head and fired one shot, and Freeman did the same. They returned to Baker's apartment and informed Johnson that "it was done."

Philadelphia Police Detective James Alexander discovered Caldwell's body at approximately 2:00 a.m. Dr. Halbert Fallinger, the Assistant Medical Examiner for the City of Philadelphia, subsequently determined the cause of death to be homicide by two shotgun wounds to the head and strangulation by ligature. Approximately five years later, on May 30, 1985, the Philadelphia police arrested Appellant. When he was taken into custody, Appellant verbally confessed to murdering Caldwell, but he later refused to sign a written statement and asked to speak to his attorney.

About one year before Appellant's trial began, Freeman was tried and acquitted of Caldwell's murder. Appellant moved to suppress his statement to the police, which the trial court denied, and the Commonwealth moved to preclude any discussion in front of the jury of Freeman's acquittal, which the trial court granted. At trial, the prosecution relied primarily on the testimony of Baker, who testified to the events of the evening of May 16, 1980. On May 22, 1986, the jury found Appellant guilty of first-degree murder,[1] criminal conspiracy,[2]

1. 18 Pa.C.S. § 2501.
2. 18 Pa.C.S. § 903.

and possessing an instrument of crime.[3]

At the penalty phase, the Commonwealth sought to prove two aggravating circumstances: (1) that Appellant had contracted with another person for the killing of the victim, 42 Pa.C.S. § 9711(d)(2); and (2) that the murder was committed by means of torture, 42 Pa.C.S. § 9711(d)(8). The defense presented two mitigating circumstances: (1) that Appellant had no history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1); and (2) other evidence of good character and record, 42 Pa.C.S. § 9711(e)(8). The jury found both the two aggravating circumstances and the two mitigating circumstances, and found that the aggravating circumstances outweighed the mitigating circumstances. Accordingly, the jury sentenced Appellant to death for the first-degree murder conviction.

Appellant appealed his convictions and judgment of sentence directly to this Court, and in a unanimous opinion, we affirmed. *Commonwealth v. Holloway*, 524 Pa. 342, 572 A.2d 687 (1990). On May 3, 1991, Appellant filed a *pro se* PCRA Petition, and he was subsequently appointed counsel, who filed an amended PCRA Petition on June 21, 1993. On July 16, 1997, the PCRA Court issued an Order and Opinion denying the Petition.

## II. *ISSUES RAISED IN THIS APPEAL*

Appellant raises the following issues for our consideration:

1.  Whether the trial court improperly excluded evidence that Appellant and the investigating officers were aware of the acquittal of alleged accomplice Daniel Freeman, which was offered for the limited purpose of showing the state of mind of Appellant and the motivation of the interrogating officer at the time Appellant purportedly confessed to the crime.

2.  Whether the prosecutor's guilt phase closing argument was egregiously improper and violated Appellant's rights to due process and a fair trial.

---

3.  18 Pa.C.S. § 907.

3. Whether Appellant is entitled to relief from his conviction and sentence because the Commonwealth used its peremptory strikes in a racially discriminatory manner.

4. Whether the jury instructions on accomplice liability were erroneous and relieved the Commonwealth of its constitutional obligation to prove every element of an offense beyond a reasonable doubt.

5. Whether Appellant's convictions and sentence must be vacated because the Commonwealth suppressed exculpatory evidence concerning a deal with its key witness and because it allowed her false testimony to go uncorrected.

6. Whether Appellant's trial counsel was ineffective at the guilt phase of his capital trial.

7. Whether the trial court erred in failing to instruct the jury that it could not consider Appellant's purported statement against him unless it found that he gave the statement voluntarily, and whether trial counsel was ineffective for failing to object or offer an appropriate instruction.

8. Whether the trial court erred when it gave the jury its opinion as to the appropriate verdict.

9. Whether Appellant was convicted of the crimes of conspiracy and possession of an instrument of crime although those charges were barred by the statute of limitations, and whether the failure of trial counsel and the court to quash the time barred conspiracy charges prejudicially affected the jury's guilt and capital sentencing deliberations.

10. Whether the PCRA Court erroneously denied Appellant's requests for discovery and for funds to obtain expert testimony, depriving Appellant of his rights to due process under the Pennsylvania and United States Constitutions and the effective assistance of post conviction counsel, and of his right to a full and fair evidentiary hearing on his post conviction claims.

11. Whether, at the penalty phase of Appellant's capital trial, counsel failed to investigate, develop and present evidence in mitigation of the offense and to rebut alleged aggravating circumstances, depriving Appellant of his right to the effective assistance of counsel.

12. Whether counsel's performance at the penalty phase of Appellant's capital trial was prejudicially deficient, in violation of Appellant's rights to the effective assistance of counsel under the Pennsylvania and United States Constitutions, in that counsel made affirmatively harmful arguments and failed to object to improper prosecutorial argument.

13. Whether Appellant is entitled to relief from his sentence of death because the jury instructions and the sentencing phase verdict slip indicated that the jury had to unanimously find any mitigating factor before it could give effect to that factor in its sentencing decision.

14. Whether Appellant is entitled to relief from his sentence of death because the trial court failed to adequately instruct the jury as to the "torture" aggravating circumstance and the prosecutor made improper argument regarding that aggravator.

15. Whether Appellant is entitled to relief from his sentence of death because the trial court failed to adequately instruct the jury concerning the "contract killing" aggravating circumstance, because the prosecutor made improper argument in support of it, and because this court construed that aggravator in a way that failed to provide adequate notice and failed to limit the sentencer's discretion.

16. Whether the instructions of the trial court prevented the jury from considering and giving effect to relevant mitigating evidence.

17. Whether all prior counsel were ineffective to the extent that they failed to object to or timely and properly raise each of the above cited errors.

18. Whether Appellant is entitled to relief from his conviction and sentence because of the cumulative effect of the above-alleged errors.

19. Whether Appellant's statement to police should have been suppressed because it was not preserved by audio and/or video recording.

20. Whether the trial court's jury instructions regarding the burden of proof were erroneous.

21. Whether the trial court's jury instructions regarding *Miranda* were erroneous.

This Court addressed issues 11, 12, 14, 15, 16, and 21 in Appellant's direct appeal. *See Holloway, supra.* Consequently, Appellant is ineligible for PCRA relief on these claims. 42 Pa.C.S. § 9543(a)(3). Of the remaining issues, Appellant raised only issue 10 and a portion of issue 6 before the PCRA Court. Thus, all of Appellant's other claims are deemed waived. *See Commonwealth v. Williams,* 541 Pa. 85, 660 A.2d 1316 (1995), *cert. denied,* 516 U.S. 1051, 116 S.Ct. 717, 133 L.Ed.2d 671 (1996). Nevertheless, Appellant manages to preserve his claims for relief by alleging, in a most perfunctory manner, that all of his prior counsel were ineffective for failing to raise the above-listed issues. *See Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998). Accordingly, except for the two issues raised before the PCRA Court, we will treat each of the remaining issues as a claim for ineffective assistance of counsel pursuant to *Albrecht.*

To obtain relief on a claim for ineffective assistance of counsel, Appellant must establish: (1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for his or her course of conduct; and (3) that there is a reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different. *Commonwealth v. Jones,* 546 Pa. 161, 175, 683 A.2d 1181, 1188 (1996). Counsel is presumed to be effective and Appellant has the burden of proving otherwise. *Commonwealth v. Marshall,* 534 Pa. 488, 633 A.2d 1100 (1993). Additionally, counsel cannot be considered ineffective for failing to raise a

claim that is without merit. *Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121 (1994), *cert. denied,* 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995). Finally, pursuant to the PCRA, an ineffectiveness claim may provide relief only where it "so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Pursuant to *Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326, 1999 WL 22976 (1999), the prejudice standard applicable to ineffective assistance of counsel claims brought on direct appeal is substantively identical to the prejudice standard for ineffective assistance of counsel claims brought on collateral appeal pursuant to the PCRA.

## III. *DISCUSSION*

### A. Ineffective Assistance of Counsel Claims

#### 1. *Exclusion of Evidence Regarding Freeman's Acquittal*

Appellant first makes a convoluted argument that the trial court's excluding evidence of Freeman's acquittal deprived Appellant of due process. According to Appellant, the fact that he knew of Freeman's acquittal at the time he made his statement to police is relevant and admissible to prove his motive for confessing and/or the motive of the police to fabricate a statement. Thus, Appellant concludes, the trial court should have allowed him to tell the jury about his knowledge of Freeman's acquittal. This argument has no merit.

In *Commonwealth v. Meredith,* 493 Pa. 1, 425 A.2d 334 (1981), a plurality of this Court reaffirmed the longstanding rule that, "a person accused of a crime may not introduce evidence of the acquittal of another person charged in connection with the same episode to create an impression before the jury that the defendant is equally innocent." *Meredith,* 425 A.2d at 337. The Court in *Meredith* recognized only one narrow exception to this general rule—the defendant may introduce evidence of another person's acquittal where that person testifies for the defense and the acquittal is introduced

"for the limited purpose of removing the cloud of criminal charges over [the defense] witness, created by Commonwealth evidence...." *Meredith*, 425 A.2d at 338.

■ Here, however, none of the elements of the *Meredith* exception are present because Appellant did not call Freeman as a witness. Consequently, there was no "cloud of criminal charges" over Freeman and no need to rehabilitate Freeman's credibility by reference to his acquittal. *Cf. Commonwealth v. Rink*, 393 Pa.Super. 554, 574 A.2d 1078 (1990), *alloc. denied*, 526 Pa. 654, 586 A.2d 922 (1991) (*Meredith* did not apply where defendant did not call acquitted accomplices as witnesses). Instead, Appellant would have used evidence of Freeman's acquittal to bolster his *own* credibility, which *Meredith* does not allow. Thus, Appellant's first claim lacks arguable merit and warrants no relief.

### 2. *Prosecutor's Guilt Phase Closing Argument*

Next, Appellant argues that the prosecutor made a number of improper comments during his closing argument in the guilt phase of the trial. None of these claims has arguable merit.

■ First, Appellant contends that the prosecutor improperly insinuated that Freeman had been convicted rather than acquitted by arguing to the jury as follows:

> You didn't hear anything about Danny Freeman's case other than from the defendant and the defendant's wife.[4] Take that testimony. Take it as you take the rest of the things that came out of both of their mouths.... Take that testimony from the defendant and put it right next to everything else he told you. See if it has the ring of truth to it. You don't know what happened to Danny Freeman, and I can't tell you. The law won't let me. If you base your verdict in this case, one way or the other, on what you think happened to Danny Freeman after never having the opportunity to hear the case against Danny Freeman, after

4. Appellant made two references to Freeman's acquittal during his testimony, and Appellant's wife made one such reference in her testimony. The trial court instructed the jury to disregard all references to Freeman's acquittal and held both Appellant and his wife in contempt.

not knowing what the verdict is against Danny Freeman, you're going to violate your oaths. And if you ever do find out, you might be surprised of what the verdict is.

We find nothing prejudicial about these remarks.

■ Appellant also claims that the prosecutor improperly stated his personal beliefs as to Appellant's guilt and the credibility of witnesses. Appellant's characterization of these arguments is flawed. The prosecutor did nothing more than invite the jury to consider Appellant's motives for testifying untruthfully and to contrast them with Baker's motives for her testimony. Again, we find no impropriety in these arguments.

### 3. *Batson Claim*

■ Appellant next claims that the Commonwealth used its peremptory strikes in a racially discriminatory manner in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). However, Appellant has failed to make a record "identifying the race of venirepersons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury selected." *Commonwealth v. Bronshtein,* 547 Pa. 460, 691 A.2d 907, *cert. denied,* 522 U.S. 936, 118 S.Ct. 346, 139 L.Ed.2d 269 (1997). "Where an appellant fails to make a record for review of a *Batson* challenge, this Court is unable to consider a claim that the trial court failed to find a *prima facie* case under *Batson.*" *Commonwealth v. Spence,* 534 Pa. 233, 627 A.2d 1176 (1993). Therefore, it is impossible to determine if Appellant's claim has arguable merit. Moreover, Appellant does not even allege that counsel's ineffectiveness with respect to this issue "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Accordingly, no relief is due.

### 4. *Jury Instructions Regarding Accomplice Liability*

Next, Appellant argues that in instructing the jury on accomplice liability, the trial court erroneously neglected to instruct the jury that they must find that Appellant himself

had the specific intent to kill. Although this argument may have arguable merit, "given the charge as a whole and the evidence as presented, we cannot conclude that this charge alleviated the Commonwealth from it's burden of proving that [Appellant] possessed the specific intent to kill [Caldwell]." *Commonwealth v. Wayne*, 553 Pa. 614, 720 A.2d 456, 465 (1998) (citing *Commonwealth v. Prosdocimo*, 525 Pa. 147, 578 A.2d 1273 (1990)). Therefore, Appellant is not entitled to relief.

### 5. *Brady Claim*

Appellant next claims that the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose a "deal" with Baker in exchange for her testimony. This claim is based on pure conjecture, as Appellant presents absolutely no evidence of such a "deal." Hence, this issue lacks arguable merit, and no relief is due.

### 6. *Trial Counsel Ineffectiveness*

Appellant challenges trial counsel's stewardship in two respects, as follows:

#### a. *Failure to Object to Admission of Appellant's Unsigned Statement*

First, Appellant argues that trial counsel was ineffective for failing to object to the admission of his unsigned statement to police, either as hearsay or as the fruit of an illegal arrest. Appellant's hearsay argument relies on *Commonwealth v. Cooley*, 484 Pa. 14, 398 A.2d 637 (1979). In *Cooley*, the Commonwealth called a police detective to testify to the contents of interview sheets on which he recorded the defendant's statement. Neither the detective nor the defendant had signed or initialed the interview sheets, and "the Commonwealth failed to establish that [the defendant] ever adopted the writing on the interview sheets as his own statement." *Cooley*, 398 A.2d at 640–41. Thus, this Court held that the detective's testimony should have been excluded as hearsay.

272

■ The case at bar, however, is distinguishable from *Cooley*, because here the Commonwealth did establish that Appellant adopted the statement as his own. Philadelphia Police Detective Harrison Graham testified that after Appellant gave his statement to Detective Ernest Gilbert and refused to sign it, Detective Graham and another officer read Appellant's statement back to him verbatim. At that time, Appellant told Detective Graham, "It's what I said, but I'm not going to sign it." Thus, notwithstanding the fact that Appellant refused to sign it, the statement constituted an admission by Appellant, and thus it was admissible. *See Commonwealth v. Duncan*, 473 Pa. 62, 373 A.2d 1051 (1977); *Commonwealth v. Darden*, 311 Pa.Super. 170, 457 A.2d 549 (1983). Consequently, trial counsel cannot be deemed ineffective for failing to object to the admission of the statement.

Appellant further argues that his arrest was illegal because the affidavit of probable cause was based on the statement of an unreliable witness, Baker. This argument has no merit. Baker's statement was reliable, and other witnesses corroborated it. Trial counsel was not ineffective for declining to raise this meritless issue.

### b. *Failure to Impeach Baker*

Second, Appellant claims that trial counsel was ineffective for failing to impeach Baker's credibility by, *inter alia*, presenting evidence of Freeman's acquittal; presenting evidence that Baker could not have seen what she claimed to have seen; presenting evidence of a history of animosity between Baker and Johnson and between Baker and Appellant; and by comparing Baker's testimony at Appellant's trial to her allegedly inconsistent testimony at Freeman's trial. Even if any of these claims had arguable merit, Appellant does not prove, or even allege, that counsel's errors "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Accordingly, no relief is due.

### 7.  *Jury Instructions Regarding Appellant's Statement*

Next, Appellant argues that he was entitled to a jury instruction that the jury could not consider his statement to police unless they made an independent determination that the statement was given voluntarily.  This argument is without merit.  Such an instruction would have been inconsistent with Appellant's claim that he never gave any statement to police; therefore, it was reasonable for trial counsel not to request the instruction.  Moreover, there was no evidence that the police coerced Appellant in any way.  Finally, Appellant cannot demonstrate that the absence of the instruction affected the outcome of the trial.  Consequently, this claim warrants no relief.

### 8.  *Trial Court's Opinion Regarding the Appropriate Verdict*

Appellant argues that it was error for the trial court to tell the jury, "[i]t is my opinion under the facts and circumstances of this case that voluntary manslaughter would not be an appropriate verdict."  N.T., 5/21/86, at 140.  However, Appellant does not explain why this statement was erroneous or how it prejudiced him.  Hence, no relief is due.

### 9.  *Statute of Limitations Claims*

Appellant next contends that he should not have been convicted of criminal conspiracy and possession of an instrument of crime because those charges were barred by the statute of limitations.  This argument has no merit.  With regard to the conspiracy charge, 42 Pa.C.S. § 5551 provides that there is no statute of limitations on "[c]onspiracy to commit murder or solicitation to commit murder if a murder results from the conspiracy or solicitation."  Concerning the possession of an instrument of crime charge, Appellant does not allege that he suffered any prejudice because of the charge.  Thus, no relief is warranted.

### 10.  *Jury Instructions Regarding Unanimity of Mitigating Circumstances*

Next, Appellant claims that the trial court violated *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d

384 (1988), by failing to instruct the jury that mitigating circumstances need not be found unanimously. *Mills*, however, was decided two years after the trial in this case, and trial counsel cannot be held ineffective for failing to anticipate changes in the law. *Commonwealth v. Gibson*, 547 Pa. 71, 688 A.2d 1152, *cert. denied*, 522 U.S. 948, 118 S.Ct. 364, 139 L.Ed.2d 284 (1997).

### 11. *Failure to Record Confession*

Appellant next argues that his confession to police should have been suppressed because the police did not preserve Appellant's statement by audio and/or video recording. This argument is patently meritless. Appellant acknowledges that no Pennsylvania case has ever required such a recording. Consequently, prior counsel could not have been ineffective for failing to argue this issue.

### 12. *Jury Instructions Regarding Burden of Proof*

Appellant argues that the trial court erroneously neglected to instruct the jury that the Commonwealth had the burden of proving each and every element of the charged offenses beyond a reasonable doubt. The record reveals, however, that the trial court did so instruct the jury. N.T., 5/21/86, at 105–06. ("[I]t is the Commonwealth that always has the burden of proving each and every element of the crime charged, and that the defendant is guilty of that crime beyond a reasonable doubt."). Accordingly, this claim warrants no relief.

### B. CLAIMS RAISED BEFORE THE PCRA COURT

### 1. *Trial Counsel's Failure to Call Freeman as a Witness*

Appellant argues that trial counsel was ineffective for failing to call Freeman as a witness. To prove that counsel was ineffective for failing to call a witness, Appellant must show that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of

the witness was so prejudicial as to have denied Appellant a fair trial. *Commonwealth v. Henry,* 550 Pa. 346, 706 A.2d 313 (1997). Here, Appellant cannot satisfy the prejudice prong. According to a March 12, 1991 affidavit, Freeman would have testified that on the night of the murder, he saw Appellant at a bar from five o'clock p.m. to nine or nine thirty p.m., and that he saw Appellant again briefly at approximately eleven thirty p.m. This testimony would have been useless to Appellant's alibi defense because the murder occurred some time after midnight. Moreover, Freeman's testimony easily could have incriminated Appellant. Trial counsel's decision not to call Freeman as a witness was reasonable and did not prejudice Appellant; therefore, this ineffectiveness claim fails.

## 2. PCRA Court's Denial of Request for Discovery and Expert Testimony

Finally, Appellant claims that he was denied his right to due process when the PCRA court denied his requests for discovery of police files and funds to obtain expert testimony regarding mental capacity. These arguments are meritless. With regard to the police files, Appellant alleges the personnel or internal affairs files of the detective who took Appellant's statement should have been disclosed, yet he identifies no specific information that would have been admissible in his case. Thus, the PCRA Court was within its discretion in denying Appellant's discovery request. *See, e.g., Commonwealth v. Abu Jamal,* 553 Pa. 485, 720 A.2d 79 (1998).

Concerning the proposed expert testimony, Appellant argues that "the provision of mental health expert services . . . was necessary for counsel to identify, plead, and present mental health related claims for relief," particularly as mitigation evidence. On direct appeal, however, this Court found that Appellant himself chose not to present mitigating witnesses at trial. *See Holloway, supra.* Accordingly, he cannot now relitigate this issue under a new theory. *See Commonwealth v. Senk,* 496 Pa. 630, 437 A.2d 1218, 1220 (1981) (citing *Commonwealth v. Jones,* 488 Pa. 270, 412 A.2d 503 (1980)).

## IV. CONCLUSION

Having determined that none of Appellants' claims merits relief, we affirm the Order of the PCRA Court.[5]

Mr. Justice SAYLOR files a dissenting opinion.

SAYLOR, Justice, dissenting.

I am unable to join fully the majority's treatment of three of Appellant's issues, and as to Appellant's *Batson* claim, I would remand for an evidentiary hearing.

First, with regard to Appellant's challenge concerning the trial court's exclusion of evidence of the acquittal of co-defendant Danny Freeman, I disagree with the majority's conclusion that the plurality decision in *Commonwealth v. Meredith*, 493 Pa. 1, 425 A.2d 334 (1981), establishes that there is but one narrow circumstance in which evidence of a codefendant's acquittal may be introduced into evidence. In my view, *Meredith* merely enunciates the sound principle that a codefendant's acquittal cannot be offered into evidence to create the impression that the defendant is equally innocent. I do not read the case as articulating a rule of preclusion foreclosing the possibility that a trial court, in the circumstances of a particular case and within the exercise of its sound discretion, might allow the admission of evidence of an acquittal for a range of other material purposes. In the present case, however, balancing the proffered reasons for admission against the danger that the jury might draw an inappropriate inference, I do agree that the trial court acted within its discretion in excluding the evidence of Freeman's acquittal.

Second, concerning Appellant's challenge involving the prosecutor's false insinuation to the jury in his closing speech that Freeman had been convicted rather than acquitted, while I agree with the majority that Appellant has failed to establish sufficient prejudice to warrant collateral relief, I would reiterate this Court's precedent condemning the practice of making

5. The Prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor, 42 Pa.C.S. § 9711(i).

untruthful assertions to the jury, express or implied. *See, e.g., Commonwealth v. Toth,* 455 Pa. 154, 158–59, 314 A.2d 275, 277–78 (1974).

Third, I believe that Appellant's claim concerning the trial court's jury charge on accomplice liability deserves elaboration. Appellant asserts that the trial court's instructions improperly suggested that the specific intent to kill necessary to support a conviction of first degree murder need only be found in the actual killer when a conviction is sought on an accomplice liability theory. In this regard, Appellant notes that the challenged instruction was nearly identical to the charge at issue in *Commonwealth v. Huffman,* 536 Pa. 196, 638 A.2d 961 (1994), a case in which this Court reversed a murder conviction because such charge contained a "patently erroneous statement of the law." [1] The Court found the instruction flawed because it "allow[s] the jury to reach a first-degree murder verdict with no finding of the requisite mental state of 'specific intent to kill' on the part of the accomplice/appellant." *Huffman,* 536 Pa. at 199, 638 A.2d at 963; *see also Commonwealth v. Spotz,* 552 Pa. 499, 518, 716 A.2d 580, 589 (1998)(stating that "[t]he charge in *Huffman* . . . incorrectly advised the jury that they could find the defendant guilty of first degree murder if either he or his co-conspirator pos-

---

**1.** The instruction given in *Huffman* proceeded as follows:

[I]n order to find a Defendant guilty of murder in the first degree, you must find that the Defendant caused the death of another person, or that an accomplice or co-conspirator caused the death of another person. That is, you must find that the Defendant's act or the act of an accomplice or co-conspirator is the legal cause of death of [the victim], and thereafter you must determine if the killing was intentional.

*Id.* at 198–99, 638 A.2d at 962. The trial judge's instruction in this case was as follows:

in order to find the defendant guilty of murder in the first degree, you must find that the defendant caused the death of another person or that an accomplice of the defendant caused the death of another person. That is, you must find that the defendant and an accomplice's acts is [sic] the legal cause of the death of [the victim], and thereafter, you must determine if the killing was intentional.

I am unable to find any meaningful basis upon which to distinguish between these respective charges. I also note that the same judge presided over both trials, and he had not had the benefit of this Court's decision in *Huffman* at the time of trial in the present case.

sessed the necessary specific intent to kill"). Thus, Appellant's assertion that the present jury instruction was erroneous has merit.

I do agree, however, that under this Court's decision in *Commonwealth v. Wayne,* 553 Pa. 614, 720 A.2d 456 (1998), Appellant cannot gain relief on this claim. In *Wayne,* the Court concluded that the trial court had issued an instruction concerning coconspirator liability that was flawed in that it eliminated the requirement of establishing the defendant's separate, specific intent to commit first degree murder in the same manner as did the erroneous accomplice liability instruction in *Huffman.* Nevertheless, the Court found that the appellant had failed to demonstrate such prejudice, stating as follows:

> The conspiracy at issue was a conspiracy to kill [the victim]. A conspiracy to kill presupposes the deliberate premeditated *shared* specific intent to commit murder. Although each member of a conspiracy must possess the specific intent to kill before a conviction of first degree murder can be sustained, that intent can be demonstrated by circumstantial evidence. Here the evidence established that appellant acted in concert with two unidentified men to kill [the victim]. Appellant and his two unknown conspirators isolated [the victim] on a street corner late at night. Appellant removed [another man] from the immediate area, leaving [the victim] at the mercy of two armed assassins. Appellant had a gun to [the other man's] head. While the two unknown men were engaged in shooting [the victim], appellant simultaneously attempted to shoot [the other man]. After the two assassins unloaded six bullets into [the victim], three of which struck a vital part of [his] body, the two men fired at [the other man] when [he] escaped from appellant's grasp. Appellant and his cohorts fled the scene together.
>
> The precise and deliberate actions of appellant and the two unidentified men establish a concerted conscious decision by all three persons to join together with the purpose of taking the life of [the victim]. The actions of each conspirator

individually reflect the elements of premeditation and deliberation necessary to prove murder of the first degree. The charge as a whole defined the elements of first degree murder so that this jury was adequately apprised of the law it must consider in reaching a decision in this case. Even with an incorrect instruction on co-conspirator liability, it cannot be said that the verdict in this case would have been different. Unlike the situation in *Huffman*, it cannot be said that the verdict was reached through speculation as to the nature of the conspiracy and the role of the conspirators. In this case, the conspiracy was a conspiracy to kill. The conspiracy had only one object, the deliberate decision to take a life. Once this jury determined that appellant was guilty of conspiracy, the only logical conclusion to reach is that the jury also determined, beyond a reasonable doubt, that appellant possessed the specific intent to kill. Thus, appellant is entitled to no relief on this issue.

*Wayne*, 553 Pa. at 633–34, 720 A.2d at 465 (footnote and citations omitted).[2]

Here, as in *Wayne*, Appellant was convicted of a conspiracy to murder. The circumstances underlying such conspiracy also involve the express agreement to commit a killing and actual participation in the criminal episode, which resulted in Caldwell's death by strangulation and shooting. Thus, based upon the specific analysis contained in *Wayne*, I conclude that, because the jury's determination regarding Appellant's specific intent may be gleaned from its disposition of the conspiracy charge, Appellant fails to demonstrate prejudice and is due no relief.

Finally, the majority dismisses Appellant's claim under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), for two reasons: first, on the basis that Appellant failed to establish a *prima facie* case, and second, on the basis

2. It is noteworthy that the only conspiracy charge submitted to the jury in *Huffman* was conspiracy to commit robbery. Thus, it would have been impossible to rely upon the conspiracy conviction to supply the requisite determination concerning the element of specific intent to commit murder.

that Appellant failed to allege prejudice for purposes of the PCRA. With regard to the majority's first point, however, I note that a plurality of the United States Supreme Court held in *Hernandez v. New York,* 500 U.S. 352, 358, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991), that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot." Although this Court has not had the occasion to specifically adopt this reasoning from *Hernandez,* the Superior Court has done so, *see, e.g., Commonwealth v. Garrett,* 456 Pa.Super. 60, 689 A.2d 912 (1997)("[w]e find that it is unnecessary to determine whether the prosecutor established a *prima facie* showing of discrimination since defense counsel offered an explanation for his peremptory challenge"), and I find its reasoning persuasive and see no reason why it should not be applied.

In this case, the district attorney would appear to have offered his reasons for various of the peremptory challenges exercised. He did this following defense counsel's attempt to make a record concerning his *Batson* challenges. For example, the following exchanges occurred:

[Defense counsel] Let the record show a Black juror.

[District attorney] Let the record further show that it is a Black male approximately the same age as the defendant.

\* \* \*

[Defense counsel] Let the record indicate a Black Male.

[District attorney] May the record indicate a single, young, unemployed, on welfare Black male.

I find it particularly significant that Appellant alleged in the brief filed in support of his PCRA petition that:

The record will support that among the white jurors assembled from the jury panel to determine defendant's innocence or guilt, there were white unemployed, single, young. At

least 90% of them were approximately the same age as the defendant.

Since Petitioner was denied a post-conviction hearing, he has not had the opportunity to prove his assertion that seated jurors of the caucasian race were of the same age as Appellant, so as to lend support to his claim that the age rationale offered by the district attorney was merely pretextual. *See generally Batson*, 476 U.S. at 106, 106 S.Ct. at 1728 (Marshall, J., concurring)(noting that the age rationale is suspect because of its inherent susceptibility to abuse).

As to the majority's finding that Appellant's claim of ineffectiveness on the part of trial counsel for failing to preserve a *Batson* challenge for direct appellate review must be dismissed for failure to allege sufficient prejudice, I note that federal courts categorize *Batson* violations within a very limited and unique category of claims which, by the nature of their impact upon the fundamental fairness of a trial, are not subject to conventional harmless error or prejudice analysis. *See, e.g., Neder v. United States*, 527 U.S. 1, ——, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999)(stating that certain limited constitutional errors resulting in a " 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself' ... deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair' " (citations omitted)); [3] *Vasquez v. Hillery*, 474 U.S. 254, 263–64, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986)(finding that racial discrimination in selection of grand jury falls within the limited class of cases involving structural error); *McGurk v. Stenberg*, 163 F.3d 470, 474 (8th Cir.1998)(concluding that a structural error required reversal,

---

**3.** It is significant that the language employed by the United States Supreme Court in *Neder* is substantially similar to the language employed in the PCRA in describing a petitioner's burden to establish prejudice. *See* 42 Pa.C.S. § 9543(a)(2)(i), (ii) (providing that, in order to obtain relief, a petitioner must demonstrate that an enumerated type of error "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place").

although the claim proceeded through a claim of ineffective assistance of counsel and was made in the post-conviction setting); *Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir.1998)(noting that a *Batson* violation is a structural defect). Here, Petitioner alleged in his amended, counseled petition that the asserted *Batson* violation resulted in a denial of due process of law, a jury of his peers, and equal protection of the law, and that counsel was ineffective for failing to properly preserve the issue. I believe that the form of prejudice alleged would be sufficient to warrant relief under both federal post-conviction jurisprudence and the PCRA. *Cf. Commonwealth v. Lantzy*, 558 Pa. 214, 227, 736 A.2d 564, 570 (1999).

Although I note that Appellant bears a substantial burden in connection with proving a *Batson* violation, particularly in light of the United States Supreme Court's recent decision in *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), as well as his trial and appellate counsel's ineffectiveness, in my view the allegations in the PCRA petition were sufficient to warrant submission of the claim to a factfinder. Thus, I would remand to the PCRA court with directions to conduct an evidentiary hearing and issue appropriate factual findings with associated legal conclusions.