**Paul SATTERFIELD, Petitioner,**

v.

**Philip L. JOHNSON, et al., Respondents.**

**Civil Action No. 02–0448.**

United States District Court, E.D. Pennsylvania.

June 21, 2004.

Paul Satterfield, Labelle, PA, Pro Se.

J. Hunter Bennett, Thomas W. Dolgenos, Assistant District Attorney, Philadelphia, PA, for Respondents.

### ORDER AND MEMORANDUM

DUBOIS, District Judge.

### ORDER

**AND NOW,** this 21st day of June, 2004, upon consideration of Paul Satterfield's Pro Se Petition for Writ of Habeas Corpus (Docket No. 1, filed January 28, 2002), Response to Petition for Writ of Habeas Corpus (Docket No. 6, filed May 13, 2002), Addendum to Response to Petition for a Writ of Habeas Corpus (Docket No. 7, filed May 15, 2002), Report and Recommendation of United States Magistrate Judge Peter B. Scuderi (Docket No. 8, filed May 29, 2003), Traverse [by Petitioner Paul Satterfield] (Docket No. 9, filed June 5, 2002), Petitioner Paul Satterfield's Objections to Magistrate Judge's Report and Recommendation (Docket No. 10, filed June 13, 2002), Order of September 9, 2002 remanding Habeas Petition to Magistrate Judge for submission of supplemental report and recommendation (Docket No. 12), Petitioner Paul Satterfield's Affidavit in Support of Objections to Magistrate Judge Report and Recommendation (Docket No. 14, filed September 19, 2002), Response to Petition–Writ of Habeas Corpus (Docket No. 15, filed November 18, 2002), Traverse by Petitioner Paul Satterfield (Docket No. 21, filed March 5, 2003), Motion by Peti-

tioner Paul Satterfield for Summary Judgment (Docket No. 22, filed April 23, 2003), Supplemental Report and Recommendation of Magistrate Judge Peter B. Scuderi, (Docket No. 23, filed May 16, 2003), Order of July 16, 2003 adopting Supplemental Report and Recommendation and denying Habeas Petition (Docket No. 26), Petitioner's Objections to Magistrate Judge's Supplemental Report and Recommendation (Docket No. 61, filed July 21, 2003), Order of July 24, 2003, granting petitioner's request of July 21, 2003, for leave to file objections out-of-time (Docket No. 29, filed July 25, 2003), and Petitioner's Supplement to Motion for Reconsideration (Docket No. 31, filed August 1, 2003), **IT IS ORDERED** as follows:

1.  That part of the July 24, 2003 Order which provides that petitioner's Objections to Magistrate Judge's Report and Recommendation would be treated as a Motion for Reconsideration of the Court's Order of July 16, 2003, is **VACATED;**

2.  The Court's Order of July 16, 2003, in which the Court, *inter alia,* denied the Petition for Writ of Habeas Corpus is **VACATED;**

3.  Petitioner's objection to the Magistrate Judge's conclusion that the ruling of the Superior Court of Pennsylvania that trial counsel was not ineffective was neither contrary to nor an unreasonable application of federal law is **SUSTAINED;**

4.  All other objections to the Supplemental Report and Recommendation are **OVERRULED;**

5.  The Supplemental Report and Recommendation of United States Magistrate Judge Peter B. Scuderi (Docket No. 8, filed May 29, 2003) is **ADOPTED IN PART** and **OVERRULED IN PART,** as follows:

(a) The Supplemental Report and Recommendation is **NOT ADOPTED** with respect to petitioner's claim that his trial counsel was ineffective for failing to interview and call Eric Freeman and Grady Freeman as witnesses at trial;

(b) The Supplemental Report and Recommendation is **APPROVED AND ADOPTED** as to all other issues raised in the Petition for a Writ of Habeas Corpus;

4.  Paul Satterfield's Pro Se Petition for Writ of Habeas Corpus is **GRANTED IN PART** and **DENIED IN PART,** as follows:

(a) The Petition is **GRANTED** with respect to petitioner's claim that his trial counsel was ineffective for failing to interview and call Eric Freeman and Grady Freeman as witnesses at trial;

(b) The Petition is **DENIED** as to all other claims;

5.  Petitioner's conviction and sentence of June 10, 1985 are **VACATED** and **SET ASIDE;**

6.  The execution of the writ of habeas corpus is **STAYED** for 180 days from the date of this Order to permit the Commonwealth of Pennsylvania sufficient time to grant petitioner a new trial and, if petitioner is found guilty, a new sentencing; and

7.  Petitioner's Motion to Compel Compliance with Federal Rule of Appellate Procedure Rule 23(a) is **DENIED.**

### MEMORANDUM

Currently before the court is the petition for a writ of habeas corpus filed by Paul Satterfield ("Satterfield" or "petitioner"). Satterfield, was convicted of first degree murder and possession of instruments of crime on June 10, 1985. On that date he was sentenced to life imprisonment on the murder conviction and a consecutive term of two and one-half years imprisonment on the conviction for possession of an instrument of crime. *Id.*

On January 23, 2003, petitioner filed the present Petition for Writ of Habeas Corpus ("Habeas Petition"). In their original answer, respondents asserted that the Habeas Petition should be dismissed because it was filed beyond the one-year statute of limitations under the Anti–Terrorism and Effective Death Penalty Act ("ADEPA"), 28 U.S.C. § 2244(d). The matter was referred to Magistrate Judge Peter B. Scuderi for a report and recommendation. Magistrate Judge Scuderi filed a Report and Recommendation on May 29, 2002, recommending that the matter be dismissed as time-barred. Petitioner filed Objections to the Report and Recommendation.

By Memorandum and Order dated September 6, 2003, the Court sustained in part and overruled in part petitioner's Objections and remanded the matter to Magistrate Judge Scuderi for a supplemental report and recommendation, directing that the timeliness issue be further analyzed and, depending on the resolution of the timeliness issue, that the merits of the petitioner be addressed.

Respondents then filed a Supplemental Response to the Habeas Petition, arguing that petitioner's claims were either unexhausted and procedurally defaulted or meritless. On May 16, 2003, Magistrate Judge Scuderi filed a Supplemental Report and Recommendation, addressing petitioner's claims on the merits and concluding the claims should be denied. No objections to the Supplemental Report and Recommendation were filed during the allowed time. The Court then adopted the Supplemental Report and Recommendation and denied the Petition for a Writ of Habeas Corpus by Order dated July 16, 2003.

Thereafter, on July 25, 2003, petitioner filed Objections to the Supplemental Report and Recommendation, accompanied by a letter request for an extension of time to file them. The Court granted that request by Order dated July 24, 2003, ruling that the Objections would be treated as a Motion for Reconsideration of the Court's July 16, 2003, Order.

The Court now concludes the most appropriate way to address petitioner's objections to the Supplemental Report and Recommendations is to vacate that part of the July 24, 2003 Order which provides that the objections would be treated as a motion for reconsideration and vacate the Order of July 16, 2003, approving and adopting the Supplemental Report and Recommendation and denying Satterfield's Habeas Petition.

Petitioner makes 27 objections to the Magistrate Judge's Supplemental Report and Recommendation. Many of these objections re-assert issues first raised in the Petition for Writ of Habeas Corpus and correctly addressed by the Magistrate Judge in his Supplemental Report and Recommendation. Other objections raise issues which can have no effect on this Court's decision to grant relief and need not be addressed by the Court.

The Court writes at this time to address only one objection—petitioner's objection to the Magistrate Judge's conclusion that the ruling of the Superior Court of Pennsylvania that trial counsel was not ineffective for failing to investigate and call at trial two exculpatory eyewitnesses, Eric Freeman and Grady Freeman, was neither contrary to nor an unreasonable application of federal law. For the reasons that follow, the Court sustains this objection.

The Habeas Petition will be granted and petitioner's convictions and sentence will be vacated and set aside without prejudice to the right of the Commonwealth of Pennsylvania to grant petitioner, within 180 days, a new trial and, if petitioner is found

guilty, a new sentencing. The Supplemental Report and Recommendation is adopted and approved in all other respects and the Habeas Petition is denied in all other respects.

## I. *FACTS*

This case arises out of a state prosecution for murder. The Pennsylvania Superior Court summarized the facts as follows:

[On] April 28, 1983, at approximately 3:30 a.m. [petitioner], a television repairman, shot and killed William Bryant due to an earlier dispute between them over payment of a television repair bill. [Petitioner] shot Bryant four times with a .44 caliber handgun. The final shot was fired at close range, through Bryant's head, as he lay wounded in the street. A police search of [petitioner's] home and vehicle for ammunition under a properly issued warrant was conducted within several weeks of the murder but uncovered no evidence.

Over a year later, [Petitioner] became acquainted with Wayne Edwards and his wife, Patricia Edwards. During a conversation with Mr. Edwards, [petitioner] described, in great detail, his shooting and killing of a former customer. Mr. Edwards immediately informed authorities of the information [petitioner] had divulged. [Petitioner] was arrested and charged. At trial, the Commonwealth's chief witness was Mr. Edwards, who testified on the details of the murder as told to him by [petitioner]. [Petitioner] admitted at trial he told Mr. Edwards he had once been a murder suspect. However, [petitioner] contended that the remainder of Mr. Edwards' testimony was fabricated because [petitioner] had pursued a romantic relationship with Mrs. Edwards.

*Commonwealth v. Satterfield,* No. 3054 Phila. 1998, at 8 (Pa.Super.Aug.22, 2000).

The warrant used to search petitioner's home contained a description by an eyewitness of a Caucasian blond haired male as the perpetrator of the crime. Petitioner is an African–American male with brown hair. The defense never interviewed the eyewitness who gave that description, Eric Freeman, and he was not called to testify at trial. In addition, Eric Freeman's brother Grady Freeman, also an eyewitness, was never interviewed by the defense nor called to testify at trial. However, petitioner read to the jury the statement in the warrant made by Eric Freeman. In addition, defense counsel, in summation, referred to the statement in the warrant.

## II. *STANDARD OF REVIEW*

### A. FEDERAL REVIEW OF STATE COURT CONVICTIONS

The Anti–Terrorism.and Effective Death Penalty Act, 28 U.S.C. § 2254 ("ADEPA") establishes the scope of federal habeas review of a state court conviction. Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This case implicates § 2254(d)(2). As will be discussed in detail below, the Court concludes that the decision of the Superior Court denying relief to Satterfield was

based on an unreasonable determination of the facts in light of the evidence presented in state court.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

The standard for evaluation of an ineffective assistance of counsel claim was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish ineffective assistance of counsel under *Strickland*, petitioner must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. 2052, and (2) that counsel's deficient performance prejudiced the defendant. *Id.* at 692, 104 S.Ct. 2052. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052.

A court, in determining whether counsel's performance fell below an objective standard of reasonableness, must evaluate "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. 2052. In applying the *Strickland* test to counsel's performance, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. 2052. The Court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they are unreasonable. *Id.* at 690, 104 S.Ct. 2052.

An evaluation of the failure on the part of defense counsel to call a witness at trial under the first prong of *Strickland*, requires the Court to decide whether the decision not to call the witness was "in the exercise of reasonably professional judgment." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052; *see also Duncan v. Morton*, 256 F.3d 189, 201 (3d Cir.2001) (citing *Strickland*, and concluding that the failure to use certain testimony "amounted to a tactical decision within the parameters of reasonable professional judgment"). Given professional reasonableness as a touchstone, "[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him." *United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir.1990)(observing that "such tactics would be considered dilatory unless the attorney and the court believe that the witness will add competent, admissible, and non-cumulative testimony to the trial record").

The second prong of *Strickland*, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is a, "probability sufficient to undermine confidence in the outcome" *Id.* In other words, a petitioner must show a "reasonable likelihood that . . . information [not presented] would have dictated a different trial strategy or led to a different result at trial," *Lewis v. Mazurkiewicz*, 915 F.2d 106, 115 (3d Cir. 1990), or a "reasonable probability that he would have been acquitted had [the uncalled witness] testified either alone or in conjunction with [him.]" *Id.*

## C. OBJECTIONS TO A REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C.A. § 636(b)(1)(C) the district court "shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate."

## III. *DISCUSSION*

### A. PETITIONER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner filed untimely objections to the Supplemental Report and Recommendation which the court chose to consider. The Court writes at this time to address only one objection—petitioner's objection to the Magistrate Judge's finding that the ruling of the Superior Court of Pennsylvania that trial counsel was not ineffective for failing to investigate and call at trial two exculpatory eyewitnesses, Eric Freeman and Grady Freeman, was neither contrary to nor an unreasonable application of federal law. This ineffective assistance of counsel claim was the third claim petitioner raised in the Habeas Petition. Petitioner exhausted this claim on direct appeal and raised the issue again on collateral review.

#### 1. *The Decision of the Superior Court on Petitioner's Ineffective Assistance of Counsel Claim for Failure to Interview and Call the Freemans as Witnesses at Trial is Based on an Unreasonable Determination of the Facts in Light of Evidence Presented in the State Court Proceedings.*

■ In considering the claim on direct appeal, the Pennsylvania Superior Court stated the following:

During the course of the investigation of the Bryant homicide, the police interviewed Grady and Eric Freeman who lived within the vicinity of the homicide. Both stated they heard gunshots at about 3:45 a.m. on April 28, 1983. Eric described the man he saw when he looked out his window as a **"white male** with short **blond hair."** Grady gave a description of a "light-skinned guy,[1] about 5'7″ or 8″ in his early thirties."

\*    \*    \*    \*    \*    \*

[T]rial counsel testified at the evidentiary hearing that although he had not personally interviewed either witness, he had reviewed their statements made to the police and he did send his investigator to try to talk to them. The investigator was unable to locate either witness. Additionally, counsel admitted that he was interested in Eric Freeman's statement as Eric had identified the man he saw as a white male with blond hair. Grady, on the other hand, identified the man as a **"light-skinned"** **black male,** with short cut hair, in his early thirties ... Trial counsel determined that only the description given by Eric would possibly have been of value to the defense.

At trial, counsel chose to make reference to Eric Freeman's statement through [Petitioner's] testimony. Counsel had [Petitioner] read the arrest warrant including the description of the subject given by Eric Freeman thereby getting the eyewitness statement before the jury. Counsel also argued this description to the jury in closing statement. The course chosen by counsel had a reasonable basis in promoting [Petitioner's] interests. Counsel chose this strategy so as to avoid the Commonwealth's

---

1. Grady Freeman identified the man as a     "light skin guy" in the Police Report.

cross-examination of Eric Freeman and additionally to avoid the Commonwealth's rebutting Eric's statement with that of Grady Freeman.

*Commonwealth v. Satterfield*, 2697 Phila.1986, at 2, 5–6 (Pa.Super. July 22, 1987) (emphasis added). The Magistrate Judge concluded that this decision was neither contrary to, nor an unreasonable application of, the standard set forth in *Strickland*, the relevant federal law on ineffective assistance of counsel.

The Court disagrees with the Magistrate Judge's conclusion regarding trial counsel's decision not to interview and call Eric Freeman and Grady Freeman as witnesses at trial and rejects that part of the Supplemental Report and Recommendation. To the contrary, the Court rules that the determination of the Superior Court of Pennsylvania that "the course chosen by counsel had a reasonable basis in promoting [petitioner's] interest" is based on a misreading by trial counsel and the Superior Court of the statement given to the police by Grady Freeman. Thus, reliance by the Superior Court on that misreading is "an unreasonable determination of the facts in light of evidence presented in the state court proceedings." 28 U.S.C. § 2254(d)(1)-(2).

Counsel's statement that the Freemans' statements were contradictory and that, therefore, not presenting Eric Freeman and Grady Freeman as witnesses was a reasonable trial strategy is based on an erroneous reading of Grady Freeman's statement to the police. Grady Freeman told the police the following:

Q. Mr. Freeman, what can you tell me about the shooting that occurred in the 5600 blk. of Litchfield St. a short while ago?

A. I was upstairs in my room, in the back room. I heard a shot and I didn't pay any attention to it at

first. Then I heard about four more shorts. Then I looked out my back window that looks up Litchfield St. and I saw a **light skin guy** about 5'7" or 8" wearing a dark sports jacket, about his early 30's, walking fast at first, but then he started running towards a car in the middle of Litchfield St. He had his right hand inside his jacket by the pocket, the inside pocket. The car was like a Volks Wagen station wagon, a dark color, and it was running and the lights were on. He was looking all around and then he just hopped in the car and drove off and he turned right on Florence St. I came downstairs to where my brother was in the kitchen then we went outside when the cops got there.

\*     \*     \*     \*     \*     \*

Q. Would you recognize the male you saw running and drive off if you saw him again?

A. I can't say. I know he was medium height and real thin and **light skin** but I only saw him from the side and back. His hair was cut real close. He was dressed in like a suit, like Navy blue coat but the pants were darker.

Petitioner's Obj., Exhibit A (and within Exhibit A, Exhibit D) (emphasis added).

Eric Freeman told the police the following about the man he saw:

Q. Mr. Freeman, what do you know about the shooting?

A. I was downstairs in the kitchen of my house, I was doing dishes. I heard gunshots, it was like three in a row. I heard like three in a row. I hesitated, then I looked out the window, I lifted the shade a little bit and I seen this guy he looked like

he was **white**, he had like **blond hair** and was wearing dark clothes it looked like a dark blue sports coat, he was about my height (5′9″). I could only see him from the side. He walked back to his car fast and before he open the door he looked both ways, he had a neat looking face, I tried to make out the license plate but it was a blur, it was yellow it had a little light on each side. He drove off, he stopped at the stop sign and then drove around the corner on Florence Ave towards 58th Street. When he was walking toward his car, he had his hand inside his jacket like he was putting away something.

\*　　\*　　\*　　\*　　\*　　\*

Q.  When you say the guy looked **white**, was he **white** or **light skinned Negro**?

A.  He was **white** with like **blond hair**, he was slim

\*　　\*　　\*　　\*　　\*　　\*

Q.  Describe the male that you say walking to the car?

A.  He was **white, blond hair,** clean cut looking face, slim, clear complexion, 5′9″, about 14–150 lbs, wearing a blue sport coat, dark pants, in his late twenties or early thirties.

Q.  Is there still white people living in the neighborhood?

A.  Not too many in that area.

Petitioner's Obj., Exhibit A (and within Exhibit A, Exhibit E) (emphasis added).

Grady Freeman never described the man he saw to the police as a "light skinned black male" as counsel asserted. To the contrary, he described him as a "light skin guy . . . ." The two statements, which is all the information on these witnesses possessed by defense counsel, cor-roborate rather than contradict one another. Both Grady and Eric Freeman describe a man with white or light skin, between 5′7″–9″ in height, in his early thirties wearing a blue sports jacket/blazer with dark pants. The statements are nearly identical.

Further, at an evidentiary hearing on post-trial motions, both Eric and Grady Freeman testified that the man they saw was "Caucasian" and in any event was not the defendant. Petitioner's Obj., Exhibit A at. 3–4. Specifically, Grady Freeman testified that the man he saw was a Caucasian, with light blond short hair and was much thinner than petitioner. According to Grady Freeman, he saw petitioner come out of the courtroom during the trial "but I had said to myself, I went home and told my mother, that he wasn't the one." *Id.* Eric Freeman similarly testified that the man he saw was Caucasian, weighing 140 pounds with short blond hair. *Id.* Their statements at that hearing were consistent with the statements they had earlier given to the police. *Id.*

The ruling of the Superior Court that the course chosen by counsel in not calling Eric Freeman as a witness at trial had a reasonable basis in promoting petitioner's interest was based entirely on a misreading of Grady Freeman's statement and the erroneous conclusion that his statement was inconsistent with that of his brother. Thus, the Court concludes that the decision of the Superior Court was based on an unreasonable determination of the facts in light of the evidence presented in state court.

### 2. Counsel's Failure to Interview and/or Call the Freemans as Witnesses at Trial Amounts to Ineffective Assistance of Counsel

Although not controlling, the Court notes a relatively recent decision of the

Pennsylvania Supreme Court announcing a five-part test for analyzing ineffective assistance of counsel claims based on counsel's failure to call a witness at trial. *Commonwealth v. Holloway*, 739 A.2d 1039, 1048 (Pa.1999). There has not been a comparable elucidation of *Strickland's* standards in the federal courts as they apply to these particular facts. In *Holloway*, the Pennsylvania Supreme Court held that to prove that counsel was ineffective for failing to call a witness at trial, petitioner must show that: (1) the witness existed; (2) the witness was available to testify; (3) counsel knew or would have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness was so prejudicial as to have denied petitioner a fair trial. The Court concludes that *Holloway* provides a useful framework to analyze petitioner's claims under *Strickland* and adopts that framework in this case. Read together, the first four prongs of *Holloway* clearly relate to the first prong in *Strickland* and the fifth prong of *Holloway* clearly relates to the second prong of *Strickland*.

■ As to the first *Holloway* prong—that the witness existed—petitioner established this fact when he called Eric Freeman and Grady Freeman as witnesses at the evidentiary hearing on post-trial motions.

As to the second prong—the witness was available to testify—petitioner presented evidence that Grady Freeman received a subpoena from the assistant district attorney handling the case, Mr. Byrd, and sat outside the courtroom for half a day during the trial. N.T. 9/23/86, pp. 21–23. Similarly, Eric Freeman testified that at the end of May or the beginning of June 1985, he received a subpoena from Mr. Byrd. In response, he appeared at Mr. Byrd's office, spoke with him about his statement and was later driven home by a detective. N.T. 9/24/86, pp. 105–111.

As to the third prong—counsel knew or would have known of the existence of the witness—counsel testified to this fact at the evidentiary hearing. At the evidentiary hearing on post-trial motions, counsel testified:

> It was my feeling that Eric Freeman might have been of some benefit to the defense. In reviewing Grady's statement as recently as a matter of half an hour ago, I don't recall anything in Grady freeman's statement that would have been a great help to the defense although maybe, if we had the opportunity to talk with him, maybe we would have learned something, but Eric Freeman's statement did give us some interest because it referred to a white man with blond hair; and, of course, that is quite a different description than Mr. Satterfield's appearance.

N.T. 9/22/86, 15. From this statement it is clear that counsel was aware of the existence of both witnesses.

As to the fourth prong—the witness was willing to testify for the defense—the evidence supports the conclusion that both Eric and Grady Freeman were willing to testify at trial. Both witnesses responded to subpoenas from the prosecution; Grady Freeman appeared at the courtroom during the trial and Eric Freeman went to the District Attorney's Office.[2] In addition,

---

2. Counsel testified that he thought a subpoena was served on Eric Freeman but not Grady Freeman:

> THE COURT: ... give us your judgment as to why you did not call the Freemans?

> MR. MANDELL: My reason for not calling them is we could not locate them, at least we could not physically get them to come into either my office or the courtroom although a subpoena was served on at least

both witnesses appeared at the evidentiary hearing on post-trial motions.

The analysis of the first four prongs of *Holloway* leads inescapably to the conclusion that petitioner has met his burden under the first prong of *Strickland.* The failure to interview Eric Freeman and Grady Freeman and call them as witnesses at trial fell below an objective standard of reasonableness. Trial counsel's decision could not be considered sound trial strategy and was not made in the exercise of reasonably professional judgment.

■ The fifth prong of *Holloway*—the absence of the witness was so prejudicial as to have denied petitioner a fair trial—corresponds to the second prong of *Strickland*—counsel's deficient performance prejudiced the defendant. The Court concludes petitioner was prejudiced by counsel's deficient performance. Both Freemans testified at the evidentiary hearing on post-trial motions that the defendant was not the man they saw and that the man they saw was Caucasian.

The Freemans were the only eyewitnesses to the crime. As described above, the statements of both Freemans were consistent and corroborated one another. Further, their testimony would have supported petitioner's trial testimony that he did not commit the crime.

The Superior Court ruled that petitioner was not prejudiced by counsel's failure to call Eric and Grady Freeman as witnesses at trial because when the petitioner testified he read the section of the warrant where the perpetrator was described as

"Caucasian." The Superior Court thought this approach constituted an acceptable trial strategy because it prevented the prosecution from impeaching Eric Freeman with Grady Freeman's statement. However, as discussed above, the two witnesses gave consistent statements to the police and thus it was objectively unreasonable for counsel to conclude that Grady Freeman's statement could have been used to impeach Eric Freeman.

In addition, the Court notes that the prosecution commented in a negative way on the fact that Eric Freeman had not been called in its closing:

Unlike this phantom person from the search warrant whose name we don't have, whose point of observations you don't have, whose sobriety or lack thereof you know nothing about, who is not subjected to cross-examination which as brought out by defense. Witnesses in a criminal care are equally available to both sides. If you have some evidence, put the person on the stand, subject him to cross-examination ... There's this business with the unnamed witness who supposedly saw whatever distance a man that looked like a white man with blond hair. If the defendant is smart enough to get two driver's licenses, I submit that if this person did see what he saw, what is to prevent this defendant from planning on wearing a hat? And who is to say what kind of tricks the light played? And who is this person?

N.T. 6/7/85, pp. 75–73, 93. Because of the way in which the defense presented the exculpatory evidence, the prosecution was

---

Eric Freeman. I do not have a copy of one prepared for Grady Freeman, but I know we had one for Eric and I recall it was served on his house. Whether he actually took it or someone else in the household did, I don't recall.

THE COURT: When he did not appear you did not ask for a bench warrant?

MR. MANDELL: No.

N.T. 9/24/86 40–41. However, both Eric and Grady Freeman testified at the evidentiary hearing on post-trail motions that they never received a subpoena from defense counsel but did receive them from Mr. Byrd of the district attorneys' office. N.T. 9/22986, pp. 21, 23; N.T. 9/24/86, pp. 105–109, 111.

able to attack its evidentiary value and raise some of the issues it would have likely raised on cross-examination without the risk of the witness giving an answer damaging to the prosecution's case. Thus, the strategy utilized by defense counsel did not immunize the exculpatory evidence from attack.

In sum, the Court concludes that counsel's failure to interview and call the Freemans as witnesses at trial amounts to ineffective assistance of counsel. *Sullivan v. Fairman*, 819 F.2d 1382 (7th Cir.1987) (perfunctory attempts by counsel to investigate, locate, and interview disinterested exculpatory witnesses whose testimony would have been material in a murder case, constitutes ineffective assistance of counsel). Although not binding on this Court, the opinion of the Supreme Court of Pennsylvania in *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975) is directly on point and is instructive. In *Twiggs*, the Supreme Court of Pennsylvania ruled,

> [i]f counsel's failure to seek compulsory process was the result of sloth or lack of awareness of available alternatives then his assistance was ineffective. In a case where virtually the only issue is credibility of the Commonwealth's witness versus that of the defendant, failure to explore all alternatives to assure that the jury heard the testimony of a known witness who might be capable of casting a shadow of a doubt upon the Commonwealth's witness' truthfulness is ineffective assistance of counsel.

*Id.* at 443. Such is the case presented by petitioner.

## IV. CONCLUSION

For the reasons set forth above, the petitioner's Habeas Petition is granted as to his claim of ineffective assistance of counsel for failure to interview and call Grady Freeman and Eric Freeman as witnesses at trial. The Court adopts the

Supplemental Report and Recommendation as to all other claims and issues.