J-S31023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAYMOND JAVIER RIVERA | |
| Appellant | No. 1535 WDA 2018 |

Appeal from the PCRA Order Entered October 15, 2018
In the Court of Common Pleas of Westmoreland County
Criminal Division at No: CP-65-CR-0004795-2011

BEFORE: OLSON, STABILE, AND McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J:                **FILED AUGUST 27, 2019**

Appellant, Raymond James Rivera, appeals from the October 15, 2018

order dismissing his petition pursuant to the Post Conviction Relief Act

("PCRA"), 42 Pa.C.S.A. § 9541-9546. We affirm.

The PCRA court summarized the pertinent facts:

> The charges in this matter arise from a shooting that
> occurred in New Kensington, Westmoreland County, on October
> 20, 2011, wherein [Appellant] shot two individuals, one of whom
> died, and the other whom was seriously injured. On the evening
> of the crime, John (a/k/a "New York Mike") Evans, Willie Young,
> and Laquan ("Zay") Cargill were at the Central City Plaza shopping
> center in the City of New Kensington. Evans intended to visit the
> Family Dollar store, which was one of the businesses in the strip
> mall, to meet up with another friend called "Tree." When Evans
> entered the Family Dollar, Young and Cargill continued to the
> Shop-n-Save store to buy cigarettes. When Young and Cargill
> returned to the Family Dollar store, Young briefly entered the
> store and told Evans that they had returned, and then waited with
> Cargill outside the store. As Evans and "Tree" came out of the
> front doors of the Family Dollar store, Young heard a woman, later

identified as April Cevario, begin screaming at Evans. Young noted that Evans did not react to the screaming woman. He then saw [Appellant] pull up in his car in the parking lot near the Family Dollar store. Young testified that Evans told [Appellant], "Come get your girl," and [Appellant] lifted up his shirt, pulled out his gun, and shot Evans two or three times. Evans fell immediately to the ground. [Appellant] then stepped over Evans, pointed the gun at Young, and stated, "You're next." [Appellant] then fired the gun at Young, who turned and ran into the Family Dollar store. Young suffered gunshot wounds to his leg and arm. Evans died at the scene. [Appellant] then fled the scene and disposed of the gun, but turned himself in to police the following day.

PCRA Court Opinion, 10/15/18, at 1-2 (record citations omitted).

On November 13, 2013, the trial court sentenced Appellant to serve life in prison without parole for first-degree murder (18 Pa.C.S.A. § 2502(a)). This Court affirmed the judgment of sentence on June 18, 2015, and our Supreme Court denied allowance of appeal on February 1, 2016. Appellant, *pro se*, filed timely first PCRA petition on December 12, 2016. Appointed counsel filed an amended petition on April 26, 2017. The PCRA conducted a hearing on July 6, 2018. This timely appeal followed the PCRA court's denial of relief.

Appellant presents two questions for our review:

1. Whether the court below erred in failing to find trial counsel ineffective for failing to interview or subpoena a witness named Deon Lee who could have testified that that the victim possessed a firearm shortly before the shooting, which would have supported Appellant's claim of self-defense[?]

2. Whether the court below erred in failing to find trial counsel ineffective for failing to engage an expert to determine whether the victims had the presence of

- 2 -

gunshot residue on their hands, which would have supported Appellant's claim of self-defense[?]

Appellant's Brief at 3.

We conduct our review as follows:

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015) (*en banc*) (internal citations and quotation marks omitted), ***appeal denied***, 123 A.3d 331 (Pa. 2015). To establish that counsel rendered constitutionally ineffective assistance, a PCRA petitioner must plead and prove that the underlying issue is of arguable merit; that counsel had no reasonable strategic basis for the disputed action or inaction; and that counsel's error prejudiced the petitioner, such that the outcome of the proceeding would have been different but for the error. ***Id.*** at 780.

Appellant argues that trial counsel was ineffective for failing to call a witness, Deon Lee, who would have testified that the decedent was in possession of a firearm shortly before Appellant shot him. To prevail on this claim, Appellant needed to prove that: Lee existed; Lee was available and willing to testify for the defense; counsel knew or should have known of Lee's

existence; and the absence of Lee's testimony deprived Appellant of a fair trial. ***Commonwealth v. Washington***, 927 A.2d 586, 599 (Pa. 2007).

Appellant has failed in his burden in this case because he failed to produce Lee at the PCRA hearing. There is no evidence that Lee was available and willing to testify for the defense, or that he would have testified in accordance with Appellant's claim. Indeed, there is no evidence that Lee exists. For the reasons explained on pages five through eight of the PCRA court's October 15, 2018 opinion, we conclude that Appellant's argument lacks merit.

With his second argument, Appellant asserts that trial counsel was ineffective for failing to procure expert analysis of gunshot residue ("GSR") kits performed on the victims' clothing. Appellant claims positive results would have supported his self-defense theory of the case. As the PCRA court explained, however, none of the witness on the scene corroborated Appellant's claim that Young was armed and fired at Appellant. No gun was recovered from Evans' body. All seven shell casings recovered from the scene were fired from Appellant's gun. Appellant himself testified that Evans did not fire a shot. In summary, there is no evidence that either victim was armed or fired at Appellant, and therefore it is unlikely that the GSR tests would have been positive. While a positive test would have bolstered the defense, a positive test was unlikely given the available evidence. On the other hand, a negative test could have been damaging to the defense, and a negative result seems

likely given the available evidence. For the reasons explained on pages twelve through fourteen of the PCRA court's October 15, 2018 opinion, Appellant's argument lacks merit.

Based on our observations above and on the PCRA court's well-reasoned opinion, we affirm the order denying relief. We direct that a copy of the PCRA court's opinion be filed along with this memorandum.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2019

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
                                 )
      vs.                      )
                                 )    No.    4795 C 2011
RAYMOND RIVERA,           )
               Defendant.   )

## OPINION AND ORDER OF COURT

AND NOW, this _15_ day of October, 2018, upon consideration of Defendant's

petition filed pursuant to the Post Conviction Relief Act, (42 Pa.C.S. §9541, *et seq.)* and

testimony taken during an evidentiary hearing on July 6, 2018, it is hereby **ORDERED**

and **DECREED** that Defendant's petition for post-conviction relief is **DISMISSED** for

the following reasons:

### I.    FACTUAL AND PROCEDURAL HISTORY:

The charges in this matter arise from a shooting that occurred in New Kensington,

Westmoreland County, on October 20, 2011, wherein Defendant shot two individuals;

one of whom died, and the other whom was seriously injured. On the evening of the

crime, John (a/k/a "New York Mike") Evans, Willie Young, and Laquan ("Zay") Cargill

were at the Central City Plaza shopping center in the City of New Kensington. Evans

intended to visit the Family Dollar store, which was one of the businesses in the strip

mall, to meet up with another friend called "Tree." (TT 162).[1] When Evans entered the

---

[1] Numerals in parenthesis preceded by the letters "TT" refer to specific pages of the transcript of the testimony
presented at trial, held August 12-17, 2013, and made a part of the record herein.

1

Family Dollar, Young and Cargill continued to the Shop-n-Save store to buy cigarettes. (TT 164). When Young and Cargill returned to the Family Dollar store, Young briefly entered the store and told Evans that they had returned, and then waited with Cargill outside the store. (TT 164-65). As Evans and "Tree" came out of the front doors of the Family Dollar Store, Young heard a woman, later identified as April Cevario, begin screaming at Evans. (TT 167). Young noted that Evans did not react to the screaming woman. He then saw Defendant pull up in his car in the parking lot near the Family Dollar store. Young testified that Evans told Defendant, "Come get your girl," and Defendant lifted up his shirt, pulled out his gun, and shot Evans two or three times. (TT 168-69). Evans fell immediately to the ground. Defendant then stepped over Evans, pointed the gun at Young, and stated, "You're next." (TT 169). Defendant then fired the gun at Young, who turned and ran into the Family Dollar store. Young suffered gunshot wounds to his leg and his arm. (TT 170). Evans died at the scene. Defendant then fled the scene and disposed of the gun, but turned himself into police the following day.

Defendant was charged with one count of criminal homicide, 18 Pa.C.S.A. §2501(a), one count of attempted homicide, 18 Pa.C.S.A. §901(a), one count of aggravated assault, 18 Pa.C.S.A. §2702(a)(1), one count of aggravated assault, 18 Pa.C.S.A. §2702(a)(4), and one count of possession of a firearm, prohibited, 18 Pa.C.S.A. §6015(a)(1).

Defendant proceeded to a jury trial, wherein he was represented by Attorneys Christopher Haidze and Alan Manderino of the public defender's office. He was found Guilty at all counts on August 16, 2013. Defendant was sentenced on November 13, 2013 to life in prison without the possibility of parole. Defendant filed a direct appeal, and the

2

Court's judgment of sentence was affirmed by the Pennsylvania Superior Court on June 18, 2015. Defendant's petition for allowance of appeal was denied by the Pennsylvania Supreme Court on February 1, 2016.

Defendant filed a *pro-se* petition for post-conviction relief on December 12, 2016. The Court appointed Attorney Timothy Andrews to represent him, and Attorney Andrews filed an amended PCRA petition on April 26, 2017. The Court ordered an evidentiary hearing on the matter, but prior to the hearing, Attorney Andrews filed a motion to withdraw as counsel, citing Defendant's statement that he had reported him to the Disciplinary Board for failure to pursue Defendant's claims. Thus, on October 24, 2017, Attorney Andrews' appearance was withdrawn, and Attorney Michael DeMatt was appointed to represent Defendant in further proceedings. An evidentiary hearing was held on July 6, 2018.

In his amended petition for relief, Defendant makes the following claims: (1) the failure to interview or subpoena a witness named Deon Lee regarding information that the victim possessed a firearm minutes before the confrontation represents ineffective assistance of counsel; (2) counsel was ineffective for failing to secure an investigator to determine if any other bullets could be recovered from the crime scene; (3) counsel was ineffective for failing to interview and subpoena former Arnold Police Chief Eric Doubt who Defendant avers would have testified that the victim had threatened Defendant's life; and (4) counsel was ineffective in failing to advise Defendant of a plea offer from the Commonwealth prior to trial; and (5) counsel was ineffective for failing to perform a gunshot residue test on either John Evans or Willie Young.

3

## II.  ELIGIBILITY FOR RELIEF:

The requirements for relief under the Post-Conviction Relief Act are set forth both in the Act itself (42 Pa.C.S. §9541, et. seq.) and in the Rules of Criminal Procedure (Pa.R.Crim.P. Rules 901 and 902).  Generally speaking,

> PCRA petitioners, to be eligible for relief, must, inter alia, plead and prove their assertions by a preponderance of the evidence. Section 9543(a). Inherent in this pleading and proof requirement is that the petitioner must not only state what his issues are, but also he must demonstrate in his pleadings and briefs how the issues will be proved. Moreover, allegations of constitutional violation or of ineffectiveness of counsel must be discussed "in the circumstances of the case." Section 9543(a)(2)(i-ii). Additionally, the petitioner must establish by a preponderance of evidence that because of the alleged constitutional violation or ineffectiveness, "no reliable adjudication of guilt or innocence could have taken place." Section 9543(a)(2)(i-ii). Finally, petitioner must plead and prove that the issue has not been waived or finally litigated, §9543(a)(3), and if the issue has not been litigated earlier, the petitioner must plead and prove that the failure to litigate "could not have been the result of any rational, strategic or tactical decision by counsel." Section 9543(a)(4).
> *Comm. v. Rivers*, 786 A.2d 923, 927 (Pa. 2001).

Further, a PCRA petition, including second and subsequent petitions, must be filed within one year of the date that the judgment of sentence becomes final.  42 Pa.C.S. §9545(b)(1); Pa.R.Crim.P. Rule 901. The Pennsylvania Supreme Court "has repeatedly stated that the PCRA timeliness requirements are jurisdictional in nature and, accordingly, a PCRA court cannot hear untimely PCRA petitions." *Comm. v. Ligons*, 971 A.2d 1125, 1164 (Pa. 2009) (citing *Comm. v. Rienzi*, 827 A.2d 369, 371 (Pa. 2003)).

4

In this case, the Pennsylvania Supreme Court denied Defendant's petition for allowance of appeal on February 1, 2016. The instant PCRA petition was filed on December 12, 2016. Thus, Defendant's petition is patently timely.

Additionally, because Defendant has raised an allegation of the ineffective assistance of counsel, he must plead and prove, by a preponderance of the evidence:

> (1) that there is merit to the underlying claim; (2) that counsel had no reasonable basis for his or her course of conduct; and (3) that there is a reasonable probability that, but for the act or omission challenged, the outcome of the proceeding would have been different. *Comm. v. Jones,* 683 A.2d 1181, 1188 (Pa. 1996). Counsel is presumed to be effective and Appellant has the burden of proving otherwise. *Comm. v. Marshall,* 633 A.2d 1100 (Pa. 1993). Additionally, counsel cannot be considered ineffective for failing to raise a claim that is without merit. *Comm. v. Peterkin,* 649 A.2d 121 (Pa. 1994); *Comm. v. Holloway,* 739 A.2d 1039, 1044 (Pa. 1999).

Each of Defendant's claims of ineffective assistance of counsel will be discussed in turn.

## III. DISCUSSION:

### (A) WHETHER COUNSEL WAS INEFFECTIVE FOR FAILING TO INTERVIEW OR SUBPOENA DEON LEE?

First, Defendant asserts that counsel was ineffective for failing to subpoena Deon Lee for trial, regarding testimony that victim John "New York Mike" Evans had been threatening Defendant, and was in possession of a firearm shortly before the shooting.

When raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements of the ineffective assistance of counsel test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of

5

the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. *Comm. v. Washington,* 927 A.2d 586, 599 (Pa. 2007). To demonstrate prejudice, the PCRA petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Comm. v. Gibson,* 951 A.2d 1110, 1134 (Pa. 2008); *see also Comm. v. Chmiel,* 889 A.2d 501, 546 (Pa. 2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense.").

Attorney Christopher Haidze testified at the evidentiary hearing:

> I remember the name. I don't think we called him. I don't know that we got in touch with him to call him as a witness. I don't recall if he would've been a witness for prior issues between the two of them or from that night. But I do not know that we tried to contact him . . . but if we did contact him, and he did provide us [relevant] information, that we would have used him. I don't recall that we were able to find him. (PCRA 7).[2]

Defendant also entered into evidence a letter that was contained within the public defender's file. The letter was dated a few months prior to trial, and was signed by Deon Lee. It read, in part:

> He came across the street to Mike's shop. And Mike and his cousin joined in with screaming at [Defendant] and making threats towards [Defendant]. [Defendant] has never got in any trouble whatsoever. He is very polite pleasant to everyone, hard worker.

---

[2] Numerals in parenthesis preceded by the letters "PCRA" refer to specific pages of the transcript of the testimony presented at the PCRA evidentiary hearing, held July 6, 2018, and made a part of the record herein.

6

> The harassment went on for some time. It got to the point where I told Mike to leave him alone. He don't bother anyone. He told me to shut the "F" up.
>
> I would talk with [Defendant] just about every day to see if he was okay because I know he was being harassed and threatened. I would tell him Mike started to run around town like he was a real killer, big time gangster.
>
> . . .
>
> I seen Mike take the gun from under his cabinet – countertop and put it in his pants on the right side. We left out of his shop and Thai and Pokey was there. So Mike asked me to walk over to Family Dollar with them. I told him no. We got to the corner of 9th and 4th, and I told him I was going home and would see him tomorrow.
> (PCRA 9-10).

Attorney Manderino similarly testified that he could not recall whether he reached out to Deon Lee in regards to the letter. (PCRA 33).

Certainly, the aforementioned testimony would be beneficial for Defendant, as Lee would assert that Evans was armed shortly before the shooting, and that Evans had been harassing Defendant for some time. Attorneys Haidze and Manderino were also aware of this witness, as reflected in the letter contained within the public defender's file. What is less clear is whether Deon Lee was willing to testify at trial, and whether he was actually available. Moreover, because Lee did not testify at the evidentiary hearing, it is impossible for this Court to determine whether Defendant was prejudiced, since it was not able to judge his credibility. *Comm. v. Khalifah*, 852 A.2d 1238 (Pa.Super. 2004). As noted by the Supreme Court in *Johnson*, the main reason that evidentiary hearings are held is "so that credibility determinations can be made; otherwise, issues of material fact

7

could be decided on pleadings and affidavits alone." *Comm. v. Johnson*, 966 A.3d 329 (Pa. 2009). If Lee were present, he could also state whether he was willing to testify at trial.

In Lee's absence, the Court is left only with a letter purportedly signed by an individual with unknown credibility who has never testified under oath regarding his statements. For these reasons, Defendant's claims regarding his counsel's failure to call this witness are meritless.

**(A)   WHETHER COUNSEL WAS INEFFECTIVE FOR FAILING TO SECURE AN INVESTIGATOR TO DETERMINE IF ANY OTHER BULLETS COULD BE RETRIEVED FROM THE CRIME SCENE?**

Defendant next contends that in an attempt to bolster his claim of self-defense, counsel should have hired an expert to recover additional bullets or shell casings from the crime scene.

At trial, Detective Hugh Shearer, an expert in the field of crime scene investigation with 42 years of law enforcement experience (12 years of which had been dedicated to crime scene investigation), testified that he recovered four (4) 9 millimeter cartridge casings near Evans' person. (TT 345, 351). Cartridge casing one (1) was recovered six (6) feet south of Evans' head; cartridge casing two (2) was recovered eight (8) feet south of Evans' waist; cartridge three (3) was recovered nine (9) feet south of Evans' waist; and cartridge case four (4) was recovered twelve (12) feet south of Evans' feet. (TT 353). Detective Shearer also recovered three (3) additional spent casings on the sidewalk in front of the Family Dollar Store. (TT 354). Fragments of bullets were also located near the scene and inside the Family Dollar Store. (TT 360-62). Moreover,

8

Detective Shearer testified that "during the course of moving the victim's left leg, a bullet, a discharged bullet, had [fallen] out of the cuff of [] his pant leg of his left leg. (TT 368).

Attorney Haidze testified during the evidentiary hearing that "we got involved well after the preliminary hearing so we didn't have anyone investigating the scene for trace evidence or physical evidence like that." (PCRA 12).

There is no merit to Defendant's claim. As noted, *supra*, an experienced crime scene investigator pored over the crime scene in careful and meticulous fashion. Detective Shearer methodically searched the active crime scene and photographed and labeled all evidence shown. As noted by Attorney Haidze, the public defender's office was not involved with the case until after the preliminary hearing, at which point the crime scene was no longer in the same condition as it was shortly after the commission of the crime. Any search conducted after the relevant evidence had already been collected would not have been legally admissible. For these reasons, defense counsel was not ineffective in their failure to call another ballistics expert to search the scene.

## (B) WHETHER COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL AS A WITNESS POLICE CHIEF ERIC DOUBT?

Defendant next claims that defense counsel was ineffective for failing to interview or call Arnold Police Chief Eric Doubt. Defendant avers that he informed Chief Doubt that Victim had threatened his life via telephone. Specifically, Defendant testified:

> I let them know that I was threatened by Mike -- I went to the
> police station in Arnold, PA. I reported to the Chief of Police.
> He had advised me to come down to Westmoreland County

9

> Courthouse and to try to put a restraining order on Mike and
> his guys.
> (PCRA 45).

Defendant further testified that a restraining order was never issued. *Id.*

As noted, *supra*, in order to successfully assert a claim of ineffective assistance in counsel in reference to failure to call a witness, the defendant must establish (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. *Comm. v. Washington,* 927 A.2d 586, 599 (Pa. 2007).

In this instance, Defendant has failed to establish even a single prong. Unlike the proffered testimony of Deon Lee, Defendant has not introduced any piece of evidence that would support the notion that Chief Doubt would have testified to such a conversation with Defendant. Neither Attorney Haidze nor Manderino had any recollection of conversations with Chief Doubt. (PCRA 13, 34). Similarly, Chief Doubt was not present to testify regarding his conversations with Defendant. Thus, what is left for the Court to analyze is a statement by Defendant regarding an alleged conversation with Chief Doubt, who did not testify to the accuracy of such a statement. For many of the same reasons that Defendant's argument regarding Deon Lee must fail, paired with the fact that Chief Doubt has not verified the veracity of Defendant's statements, this claim too must fail.

10

(C)    WHETHER COUNSEL WAS INEFFECTIVE FOR FAILING TO
       ADVISE DEFENDANT OF A PLEA OFFER FROM THE
       COMMONWEALTH?

Defendant also asserts that counsel was ineffective for failing to notify him of an

offer made by the Commonwealth. Defendant does not state the details of such an offer,

but testified at the evidentiary hearing as follows:

> I remember that I was told by my counsel that it was a self-
> defense case; it was all or nothing. That they didn't believe
> the plea offer that was given to me was – that I shouldn't take
> it. It was good for me to win the case. (PCRA 46).

When asked what the offer was, Defendant testified, "there was – final 10 to – 5 to 10 for

different types of programs or extensions—for different types, running separate." (PCRA

46).

Although Defendant's amended PCRA asserts that Defendant was not informed of

a plea offer, Defendant is seemingly arguing that counsel was ineffective for advising

Defendant to reject a proffered offer. Certainly, counsel has a duty to inform his or her

client of tendered plea agreements and may be found ineffective for failing to do

so. *Comm. v. Copeland*, 554 A.2d 54 (Pa.Super. 1988). To succeed on this issue,

Defendant must prove (1) an offer for a plea was made; (2) trial counsel failed to inform

him of such offer; (3) trial counsel had no reasonable basis for failing to inform him of

the plea offer; and (4) he was prejudiced thereby. *Id.* If Defendant is averring that counsel

improperly advised him to reject a plea offer, the standard ineffective assistance of

counsel three-prong test would apply.

11

Attorney Haidze testified that he did not recall any plea offers being made, but that if there were "we would have discussed with Mr. Rivera." (PCRA 14). Further, he testified that he "would never advise a client to reject an offer," and that it is his practice to simply advise a client of the offer. (PCRA 22). Attorney Manderino testified that he did not recall any plea offers being made. (PCRA 34). He also testified that he always informs clients of plea offer, viewing it as his "obligation even if the offer was ridiculous." (PCRA 39).

Defendant has not offered any proof that such a plea offer existed. If Defendant is arguing that he was unaware that a plea offer existed, it is unclear how Defendant learned of such an offer that does not exist in the record nor in the public defender's file. If Defendant is arguing that counsel advised him to reject an offer, Attorney Haidze and Manderino's credible testimony belies this averment. As aptly noted by Attorney Haidze at the evidentiary hearing, "probably every time we get an offer, we encourage the client to consider it because that certainly moves things along quicker than investing the time that it took to try this case." (PCRA 22). As the Court has determined the defense counsel's testimony was credible and that Defendant's testimony was not credible, this claim, too, must fail.

### (E) WHETHER COUNSEL WAS INEFFECTIVE FOR FAILING TO HIRE AN EXPERT TO DETERMINE WHETHER GUNSHOT RESIDUE WAS PRESENT ON VICTIM'S PERSON?

Last, Defendant avers that counsel was ineffective in their decision not to present an expert who could determine whether gunshot residue was present on the clothing of

12

John Evans. Testimony presented at trial established that gunshot residue tests were not performed on either Willie Young or John Evan's clothing because it is the policy of the Pennsylvania State Police not to perform such tests on victims. (TT 121).

First, there is merit to Defendant's claim. If gunshot residue were found on either victim, such evidence would certainly be beneficial for Defendant's claims of self-defense. However, Defendant cannot successfully assert that had such a test been performed on the victims, there is a reasonable probability that the outcome of the proceeding would have been different.

Doctor Cyril Wecht testified that John Evans died as the result of two (2) gunshot wounds. (TT 332). Young testified that he believed that Defendant shot at him three times, but he was shot twice. (TT 170, 173). Their testimony is consistent with the findings of Detective Shearer, who located a total of seven (7) shell casings at the scene. Four (4) of those were recovered near Victim John Evan's person, while three (3) were recovered on the sidewalk of the Family Dollar, near where Victim Willie Young was standing at the time he was shot. Moreover, Corporal David J. Burlingame testified that as an expert in the field of ballistics, it was his opinion that the seven (7) discharged shell casings were discharged by Defendant's firearm. (TT 452).

As to his contention that John Evans' clothing should have been tested for gunshot residue, Defendant testified at trial that Evans never fired a shot prior to being mortally wounded. After firing two warning shots at the ground, Defendant testified that Evans "kept coming" at him. At that time, Defendant stated he took a gun out of his waistband, and "was on his way to pointing towards me." He then shot Evans. (TT 779-

13

781). Thus, based on Defendant's own testimony and the evidence presented, defense counsel acted reasonably in not testing Evans' clothing for gunshot residue, and there is little evidence that the result at trial would have been different had the test been administered.

While Defendant contends that Evans never fired a shot, he did testify that he only shot Young after Young fired a shot in his direction. Specifically, he testified that prior to shooting Young, he saw him reaching for his waistband and "heard a pop comin[g] from his direction. (TT 782). At that point, he testified that he shot him. (TT 779-82).

Defendant's testimony is not supported by the record. As noted, *supra*, Corporal Burlingame stated in his expert opinion, all shell casings found at the scene came from the Defendant's firearm that was discarded and later recovered by officers. (TT 452). None of the individuals who arrived at the scene shortly after the shooting testified that Young was in possession of a firearm. (TT 70-90).

Based on the lack of evidence in the record supporting the notion that Willie Young fired a shot at Defendant prior to being shot by him, there is little evidence that had a gunshot residue test been performed on Young, the result at trial would have been different. For that reason, Defendant's claiming regarding Willie Young must also fail.

For the reasons set forth in the Court's Opinion, Defendant's Petition for Post-Conviction Relief, filed pursuant to the Post Conviction Relief Act, (42 Pa.C.S. §9541 *et. Seq.*) is hereby **DISMISSED.**

14

THE DEFENDANT IS NOTIFIED THAT ANY APPEAL TO THE SUPERIOR COURT OF PENNSYLVANIA FROM THIS COURT'S DISMISSAL OF HIS PCRA PETITION MUST BE FILED WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS ORDER OF COURT.

BY THE COURT:

Rita Donovan Hathaway, President Judge

ATTEST:

_____

Clerk of Courts

cc:    File
John Petrush, Esq., Assistant District Attorney
Michael Dematt, Esq., Counsel for Defendant
Chris Haidze, Esq., Trial Counsel for Defendant
Alan Manderino, Esq., Trial Counsel for Defendant
Raymond Rivera, Defendant – SCI Forest, (LY-3752)
        286 Woodland Drive
        P.O. Box 945
        Marienville, PA 16239
Pamela Neiderhiser, Esq., Court Administrator's Office

15