J-S04035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KIETH CAMPBELL | : | |
| | : | |
| Appellant | : | No. 251 EDA 2024 |

Appeal from the PCRA Order Entered December 15, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003623-2019

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 5, 2025**

Appellant, Kieth Campbell, appeals from the order dismissing his petition filed pursuant to in the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541, *et seq.*, in which he challenged the effectiveness of his prior counsel and alleged that counsel had improperly induced him to enter a guilty plea based on incorrect legal advice.[1]  Appellant previously entered a guilty plea to three counts of third-degree murder and single counts of aggravated assault and driving under the influence (DUI) of a controlled substance or metabolite as a first offense.[2]  Upon review, we affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] While Appellant's name is docketed as "Kieth Campbell" in this appeal, he is mainly referred to as "Keith Campbell" in the certified record.

[2] 18 Pa.C.S. §§ 2502(c), 2702(a), and 75 Pa.C.S. § 3802(d)(1), respectively.

The PCRA court has summarized the underlying facts supporting the convictions, as accepted by Appellant during his oral guilty plea colloquy, as follows:

On January 2, 2019, at approximately 1:11 [a.m.], [Police] Officer Betsch, who is assigned to the Newport Delaware Police Department was sitting at a red light at the intersection of East Newport Pike and Becker Street in Newport, Delaware. At this time, a white Audi drove past him in the left lane at [a] high rate of speed, disregarding the red light. Officer Betsch activated his lights and sirens in [an] attempt to stop the vehicle. During his pursuit, he was going over 100 miles per hour. He was joined by four other state police officers. The pursuit was terminated at [ap]proximately 1:27 [a.m.] due to Appellant's high rate of speed. At this time, Appellant was passing over Naamans Road into Pennsylvania. Dash cam videos from each of the officer's vehicle[s] capture[d the] pursuit.

Approximately 18 minutes later, around 1:45 [a.m.,] Appellant's car was seen coming down the ramp onto Packer Avenue from I-95 North. Appellant was traveling westbound at this time. On the eastbound side of Packer Avenue, an Acura was being driven by one of the decedents in this case, Joseph Ferry. There were three other individuals in the car at this time. Kelly Anne Wiseley was in the front passenger seat, Dennis Palandro [was] behind the driver's seat[,] and his wife Nicole Palandro [was] behind the front passenger seat. As they traveled down the 600 [b]lock of Packer Avenue, Appellant st[r]uck their car.

In efforts to avoid the collision, Mr. Ferry ma[de] a "defensive maneuver[."] As a result of the maneuver, the point of impact on the Acura caused the vehicle to be thrown around in a circle. Mr. Ferry was ejected from the car and came to rest approximately 30 feet from the vehicle's resting point. Kelly Wisely, the front seat passenger was entrapped in the passenger seat between the dashboard firewall. Dennis Palandro, the left rear passenger was forced around the interior of the vehicle. Mr. Ferry, Ms. Wiseley[,] and Mr. Palandro were pronounced dead [at] the scene. Medical examiner, Dr. Lindsay Simon[,] determined the manner of death for all three individuals was the accident. Mrs. Palandro was severely injured but survived. She was in critical condition and

- 2 -

was treated at Thomas Jefferson Hospital. At the time of the guilty plea, she had five surgeries[] and was in the hospital for the entire month of January 2019.

Officer Paul Busch from the [Accident Investigation Division (AID)] was assigned to investigate this incident. Officer Busch [conducted] an accident reconstruction and was able to determine[,] with a reasonable degree of scientific certainty, that the Audi being driven by Appellant in this case was going 92.0577 miles per hour at the time of the crash. The Acura was going 25 miles per hour. Five seconds before the crash, the Acura was going 37 miles per hour. The impact caused the vehicle to project 81 feet in the opposite direction of its travel. Officer Busch's investigation further revealed that the Audi intentionally steered into the path of the Acura causing the deadly crash.

Prior to the accident, Appellant was with his mother, Unpin Campbell. An interview with his mother revealed that he ha[d] been acting "erratic" most of the day. Ms. Campbell had gone with him to the casino in Delaware Park and noticed at some point Appellant wrote stuff on paper and kept saying something about "[h]ave Jenny['s] mom call me [to] make sure she is okay, and that something bad was going to happen to everyone tonight, and that we need to trust him and believe in him." She told him he needed to go back to this hospital, which he did, but left shortly after because it was too crowded.

After the crash, Appellant's blood was drawn. Dr. Richard Cohn, a forensic toxicologist, determined[,] within a reasonable degree of scientific certainty, that Appellant was a recent user of multiple psychoactive agents, namely marijuana and amphetamine. He determined that they were taken in close time proximity to each other and in toxicologically significant dosage amounts. As a result, Appellant was under the combined, impairing psychoactive effects of the drugs and was unfit to operate a motor vehicle safely on the highway.

PCRA Court Opinion, 6/6/24, 4-6 (record citations omitted; some formatting in brackets). In addition to this summary, we note that Appellant was found

to have sustained several self-inflicted stab wounds when the police arrived at the scene of the collision. *See* N.T., 2/9/21, 26.

On February 9, 2021, Appellant entered his guilty plea to the above-referenced offenses. *Id.* at 35. The Commonwealth agreed to *nolle prosse* additional charges in exchange for the plea, but did not make any agreement as to a sentencing recommendation other than to agree that it would not seek a mandatory life imprisonment sentence for the multiple counts of third-degree murder.[3] *Id.* at 8, 12; Written Guilty Plea Colloquy, 2/9/21, 1 ("Plea Bargain or Agreement"); *see also* 42 Pa.C.S. § 9715(a) (setting mandatory sentence of life imprisonment, notwithstanding other statutes to contrary, for "any person convicted of murder of the third degree in this Commonwealth who has previously been convicted ***at any time*** of murder … in this Commonwealth…") (emphasis added).

At the conclusion of a sentencing hearing held on April 15-16, 2021, the court imposed an aggregate sentence of thirty-seven and one-half to seventy-six years' imprisonment, including consecutive terms of eleven to twenty-two years for each of the murder convictions and four-and-one-half to ten years' for aggravated assault, with a concurrent term of six to twelve years' for the

_____

[3] The additional charges included three counts each of homicide by vehicle and homicide by vehicle while driving under the influence and single counts of recklessly endangering another person and possessing an instrument of crime. 75 Pa.C.S. §§ 3732(a) and 3735(a)(1)(i), and 18 Pa.C.S. §§ 2705 and 907(a), respectively. *See* Trial Disposition and Dismissal Form, 2/9/21, 1-3.

DUI conviction. ***See*** N.T., 4/16/21, 83; ***see also*** Sentencing Order, 4/16/21, 1-2.

On May 8, 2022, Appellant filed a counseled PCRA petition. In it, he claimed, *inter alia*, that his plea counsel provided ineffective assistance by inducing his plea "by giving him erroneous legal advice that informed him that the Commonwealth was automatically entitled to a conviction on third-degree murder solely because his case involved a motor vehicle accident." PCRA Petition, 5/8/22, ¶ 10(a). In an amended PCRA petition, he alleged that counsel misadvised him by telling that: (1) "the Commonwealth could prove malice for third[-]degree murder [by] proving only 'mere recklessness;'" and (2) "Pennsylvania law says a third-degree murder conviction can be obtained in [an] automobile-related case with proof of only mere reckless driving." Amended PCRA Petition, 8/16/22, ¶ 10. He asserted that when he entered his guilty plea, "he possessed only a version of the law that was explained to him by his plea counsel." Memorandum of Law, 8/16/22, 2.

In support of his claim, Appellant proffered a copy of an email to his father from one of the attorneys who represented him at his plea hearing, dated December 10, 2020. Appellant quoted the following portions of the email in support of his claim:

> [Third-degree] murder does not require an INTENT; it requires ***mere RECKLESSNESS***. Recklessness can be established by various factors, such as speed, road conditions, manner of driving and/or drugs or alcohol in one's system and other facts specific to the accident in a case. In Keith's case our concern is that even Keith's "best" version of events will be deemed *as RECKLESS*- his

- 5 -

suffering from a mental health episode, leaving the hospital without seeing a doctor whether against medical advice or not, leading police on a [two-state] high speed car chase, and causing a collision at what the Commonwealth believes is 70 some miles per hour while attempting to commit suicide via repeated self-inflicted stab wounds.

…

I feel an ethical and moral obligation to put this in terms as plainly as possible to make sure you are all aware and One Hundred percent clear on the risks associated with trial and the viability of our defense in the face of that risk.  Essentially what we have here in terms of a defense to the [third-degree] murder charge, based on the law that applies and the facts in this case, is an argument that amounts to either this was not reckless or not reckless enough to meet the threshold of RECKLESSNESS for purposes of [third-degree] murder.

Another way of saying it is essentially this was a little dangerous, definitely negligent but not reckless conduct within the purview of the statute.  Not the kind of recklessness that [third-degree] murder aims to punish…

…

I need to make it clear that there are significant problems with this argument and a Judge may likely disregard this argument because it is not consistent caselaw.  Our argument against [third-degree] murder is not one that is entirely sound in law, and caselaw is not on our side here.  We believe that we have completed an exhaustive review and research of Pennsylvania law and [caselaw] to find other cases similar to ours where the court agreed that the actions were not [third-degree] **murder and our results have been disappointing and unsuccessful.  The Supreme Court has found that when there is an automobile accident with recklessness it is 3rd degree murder.**

…

So, if I were Keith, with a not so strong legal argument against [third-degree] murder, and the risk of MANDATORY LIFE if I am convicted, I would take that chance and go to trial.  I would not

be willing to risk my freedom for the rest of my life on this argument.

Memorandum of Law, 8/16/22, 11-12, 16-17, *quoting* Attached Email from Plea Counsel to Father, 12/10/20, ¶¶ 3, 6-7, 11-12 (some formatting in brackets; emphasis in bold added in Appellant's quotation; emphasis in capitalization and italics in original).

He also proffered a second email from the same plea hearing attorney, addressed to his father, dated March 13, 2020, including the following paragraph:

> I did my best to assure your wife that we are doing everything that we can to get Keith out of this with the least amount of jail possible. That has always been the goal- but least amount of jail is a subjective statement because of the penalties we are up against, and the mandatory minimums at play here. Whether he pleads to [third-degree] murder or to an enhanced penalty on vehicular homicide is still up for debate, your wife indicated she does not agree that this is [third-degree] murder, but I think she is somewhat confused as to what [third-degree] murder under the law requires it is any "reckless or negligent act by a person that causes the death of another." We have discussed and mentioned that we are not that keen on the [third-degree] murder charge in our conversations with the [District Attorney], and that discussion is still very much on the table. We all did agree at our last meeting at their office that we would first focus on whether we can agree to a number, and then we would discuss what charges we ultimately would plead to.

Motion for Leave to Amend PCRA Petition, 8/6/23, ¶ 4, *citing* Attached Email from Plea Counsel to Father, 3/13/20, ¶ 7 (some formatting in brackets).

With the consent of the Commonwealth, the PCRA court presided over an evidentiary hearing, at which Appellant testified and presented the

testimony of his parents, and the Commonwealth presented the testimony of one of Appellant's former attorneys, who drafted the above-referenced emails, Julia Rogers, Esquire.

Appellant's father testified that his son wanted to proceed to trial on the third-degree murder charges and that he proceeded with the plea based on Attorney Rogers' advice in the proffered emails, which suggested that third-degree murder pertained to acts of mere recklessness. *See* N.T., 8/28/23, 11, 13-14. Appellant's father further testified that he convinced his son to enter the guilty plea based on that advice. *Id.* at 16-17. He opined that he would not have advised Appellant to enter the guilty plea if he knew that third-degree murder would have required more proof than just a reckless car accident that resulted in death. *Id.* at 18.

On cross-examination, the Commonwealth confronted Appellant's father with a different pre-plea-hearing email, dated October 7, 2020, containing a meeting agenda, in which counsel advised, *inter alia*, that: (1) third-degree murder was "essentially aggravated assault under [Pennsylvania] law[,] the only difference being that someone dies in third-degree murder;" and (2) the standard for third-degree murder is "an individual who consciously disregards an unjustified and extremely high risk that his actions might cause death or serious bodily harm to another, [who] acts with malice." N.T., 8/28/23, 25-27. Appellant's father agreed that the email detailed "a different standard" than just "mere recklessness." *Id.* at 29.

Appellant's mother testified consistent with her husband. She maintained that Appellant pleaded guilty due to her and her husband telling him that he needed to plead guilty because his attorney had asserted that the Pennsylvania Supreme Court had ruled that "mere reckless[ness] is third-degree murder." *See* N.T., 8/28/23, 59-60. She added that Appellant's attorneys never told her that third-degree murder required more proof than "a merely reckless car accident that results in death" and, if she was aware that third-degree murder required more proof, she would not have advised her son to plead guilty. *Id.* at 60-61.

Appellant testified that he pleaded guilty because his attorneys had told him "any car accident that results in death is third-degree murder, based off of mere recklessness[,] and that would give [him] mandatory life in jail." N.T., 8/28/23, 70; *see also id.* at 83 ("She said any car accident that results in death would be third-degree murder based off of mere recklessness."). He asserted that his counsel never informed him that third-degree murder required more proof than mere recklessness. *Id.* at 70-71. He agreed that his parents convinced him to plead guilty after his parents relayed "a bunch of information from the lawyers." *Id.* at 71-72. He testified that he would not have pleaded guilty and would have wanted a trial if he had known that third-degree murder required more proof than mere recklessness. *Id.* at 72-73, 76-77. He acknowledged that he was aware, prior to entering his guilty plea, that he risked a mandatory term of life imprisonment if he proceeded to

trial and had been convicted of multiple counts of third-degree murder. *Id.* at 74-78.

On cross-examination, Appellant testified that his counsel had mailed him a selection of the emails that were sent to his parents, but he did not recall ever seeing the meeting agenda email to his parents, dated October 7, 2020, which was the subject of the cross-examination of his father. N.T., 8/28/23, 98-100. He maintained that Attorney Rogers told him that any car accident that results in death would be third-degree murder and denied that the attorney explained the concept of malice to him. *Id.* at 97, 102. He nevertheless acknowledged that the plea court advised him during its oral guilty plea colloquy that third-degree murder was "a killing without specific intent to kill, but with malice." *Id.* at 106 (Appellant: "If it is on [the] record, then it is on [the] record.").

Attorney Rogers testified that she had at least ten separate face-to-face consultations with Appellant and communicated with him through written correspondence. *See* N.T., 8/28/23, 124-25. She noted that while she would discuss her conversations with his parents in her in-person meetings with Appellant, she never sent him copies of her emails with his parents. *Id.* at 126-27. She confirmed that she provided Appellant with a copy of the meeting agenda that she had sent his father in the email dated October 7, 2020, along with "10 or 15 cases" in which third-degree murder convictions were appealed and upheld "under similar factual scenarios." *Id.* at 128, 130. On that occasion, she recalled that she talked with Appellant about, *inter alia*, the

elements that the Commonwealth would have to prove for him to be found guilty at trial of third-degree murder, including malice. *Id.* at 129-30.

As to her advice to Appellant, Attorney Rogers testified as follows:

We told him that the act of driving while attempting suicide at a high rate of speed would be interrupted [*sic*] by this [c]ourt likely to be malice. And then a jury would likely be convinced that this was malice, given that it clearly involved him disregarding the risk that he would pose to others and the situations.

We had a lot of conversations about what you have -- when you're attempting suicide, people attempt suicide in situations in which there is no risk to other people; they jump off a bridge, they take a bunch of drugs, they shoot themselves. Then in a situation like this, the underlying act would likely be interpreted as malice.

N.T., 8/28/23, 130. She further acknowledged that she had no reason to believe that he misunderstood the elements of third-degree murder and the nature of malice in his case. *Id.* at 137. She affirmed that she never told him that the Commonwealth only needed to demonstrate mere recklessness to prove third-degree murder. *Id.* at 143 ("Q. To the best of your memory, did you ever tell your client that the Commonwealth only had to prove mere recklessness to prove their case? A. I absolutely never told the Commonwealth that -- or told [Appellant] that. Malice was something we talked about *ad nauseam*."). She also confirmed that she never advised him that the Pennsylvania Supreme Court had held that any car accident that resulted in death would support a third-degree murder conviction. *Id.* ("Q. To the best of your memory, ma'am, did you ever tell your client that any car

accident that results in death would qualify for third-degree murder under Pennsylvania Supreme Court case law?  A.  Absolutely not.").

On cross-examination, Attorney Rogers agreed that third-degree murder required more than mere recklessness but explained that her use of "mere recklessness" in her communications with Appellant's parents was an attempt to get them to understand that third-degree murder did not require a specific intent to kill:

> As I told the Commonwealth, we had a good amount of struggle getting the parents to understand that you could be convicted of murder for something other than specific intent to kill.  So my use of the word "mere," was simply as a demonstrative example that you can be convicted of third-degree murder, even when you don't have the specific intent to kill, because you conduct yourself otherwise that causes the death of another.

N.T., 8/28/23, 150.  She disagreed with the notion that the reference to "mere recklessness" was incorrect advice, referring to the fact that the emails including the reference were part of an "ongoing conversation … to get the parents to understand the difference between specific intent to kill … and the lesser included offenses that can constitute murder in the State of Pennsylvania."  *Id.* at 152.  She did, however, agree that her emails did not provide the definition of third-degree murder and agreed that her assertion that "[t]he Supreme Court has found that when there is an automobile accident with recklessness, it is third-degree murder," was not an "accurate narration" of Pennsylvania law.  *Id.* at 152-53.

- 12 -

Concerning her emails to Appellant's parents, Attorney Rogers testified that she was unaware that his parents were sharing her emails to them with Appellant and explained that she advised against them sharing them with Appellant:

> That was also specifically discussed that he shouldn't have information in his cell when he had a cellmate that could, as indicated in one of my e-mails to the parents, the cellmate could go through his stuff and use it to try to get himself a better offer because this was a high profile case and we were very concerned that other inmates were going to turn on Keith while he was in there.

N.T. 8/28/23, 165. She remarked that she would not have written the correspondence with the parents if she knew they were being shared with Appellant:

> Well, the parents sent the e-mails that we told them not to share with Keith in prison -- this is the first I'm hearing on that. I was never aware that that was happening. I certainly wouldn't have written these extensive e-mails if that is what was happening, because that was against what we were trying to isolate Keith from.

*Id.* at 166.

At the end of the hearing, the PCRA court held the case under advisement until the parties could submit post-hearing briefs. On October 19, 2023, Appellant filed an amended PCRA petition proffering additional emails between Attorney Rogers and his father to demonstrate that his father told Attorney Rogers that he would be mailing a copy of the attorney's December 10, 2020 email to his son. *See* Motion for Leave to Amend PCRA Petition,

- 13 -

10/19/23, ¶¶ 3-6; *see also id.*, Attached Email from Appellant's Father to Attorney Rogers, 12/10/20 ("I will copy your email and mail it to Keith.  It might be better for him to read your explanation of his case rather than him trying to remember what was said to [*sic*] over the phone or by Zoom.").

On December 15, 2023, following its review of the written briefs from the parties, the PCRA court dismissed the petition.  The PCRA court made a few credibility determinations in its opinion.  First, the PCRA court rejected Appellant's testimony that plea counsel had provided him incorrect information about the elements of third-degree murder because that testimony was contradicted by Appellant's statements in his guilty plea colloquy and also through plea counsel's hearing testimony about "their frequent discussions."  *See* PCRA Court Opinion, 6/6/24, 10-11 (noting Appellant confirmed his understanding of elements of his offenses in colloquy, court clarified that third-degree murder involved malice, and in-court plea colloquy was conducted after Appellant visited with counsel and reviewed written guilty plea colloquy).

Second, the PCRA court credited plea counsel's testimony that she provided accurate advice to Appellant concerning his lack of a potential defense to third-degree murder based on an alleged diminished mental capacity.  *See* PCRA Court Opinion, 6/6/24, 11-12 ("[Counsel] made clear that pursuing a diminished capacity defense would entail admitting guilt to third-degree murder and [Appellant] facing a life sentence.").

Third, the PCRA court found that plea counsel accurately advised Appellant on the elements of third-degree murder:

Through testimony at both the guilty plea hearing and the evidentiary hearing, [plea c]ounsel clearly and repeatedly discussed the facts and merits of the case with Appellant. Specifically, [c]ounsel informed Appellant of the necessity for the Commonwealth to prove malice. This requirement was clearly and accurately conveyed to Appellant through various means of communication. Conversely, Appellant's testimony regarding counsel's alleged communication of a "mere recklessness" standard and equating all vehicular accident deaths to third-degree murder was inconsistent and unconvincing.

PCRA Court Opinion, 6/6/24, 12-13 (record citation omitted).

Lastly, the PCRA court found that plea counsel "provided accurate legal advice regarding third-degree murder and automobile accidents." PCRA Court Opinion, 6/6/24, 13. The PCRA court additionally noted that Appellant's conduct satisfied the malice element that was properly explained to Appellant:

An automobile accident may constitute third-degree murder if there's evidence of malice, indicating conscious disregard for the high risk of causing death or serious bodily injury. *Commonwealth v. Packer*, 168 A.3d 161 (Pa. 2017). Similarly, as in the present case, [Packer]'s actions[] included going to Walmart, opening a newly purchased dust remover, and inhaling two to three times in five-to-ten second bursts each time. *Id.* at 163. After driving out of the parking lot and getting to a red light, [Packer] huffed again. *Id.* at 164. While under the influence and driving at about 43 MPH, [Packer] hit a vehicle and ultimately caused a collision resulting in death, which demonstrated reckless behavior meeting the legal definition of malice for third-degree murder. *Id.*

As such, [Packer] was convicted of third-degree murder, which conviction was upheld by the Pennsylvania Supreme Court, who found that the actions were sufficient to meet the legal definition

of **malice**. **Id.** at 168. Here, and again, [Appellant] was repeatedly told by counsel, that his actions on the night the victims were killed were more than likely able to meet the legal definition of malice for third-degree murder, as testified to by both Appellant and his counsel at both the evidentiary hearing and guilty plea. Appellant left a hospital against medical advice, engaged in a multi-state high speed chase, attempted to commit suicide by stabbing himself while driving, and ultimately purposefully drove his car into the car carrying the victims. Appellant not only expressed a desire to end his own life but also displayed a blatant disregard for everyone on the road that night. Appellant's behavior was so egregious that the pursuing police officers decided to halt the pursuit rather than continue endangering the lives of those on the road on the night in question. This conduct unequivocally meets the legal threshold for malice in the context of a fatal car accident. Appellant's actions resulted in three deaths. There is no question that Appellant engaged in conduct far beyond that in [**Packer**].

PCRA Court Opinion, 6/6/24, 13-14 (record citations omitted; emphasis in original).

The PCRA court made a legal determination that any of the statements by PCRA counsel to Appellant's parents in the emails could not result in prejudice, *i.e.*, the entry of an involuntary or unknowing guilty plea, because PCRA counsel had properly advised Appellant on the elements of third-degree murder: "The statements made to Appellant's parents are immaterial and do not have a bearing on Appellant's ineffective assistance of counsel claim. Ultimately, if Appellant knew the elements of the crime, it does not matter whether his parents understood them." PCRA Court Opinion, 6/6/24, 12.

Appellant timely appealed and complied with the PCRA court's order to file a concise statement of errors complained of on appeal.

Appellant presents the following questions for our review:

1. Is the PCRA court's dismissal of [Appellant's] petition objectively supported by the record and free of legal error where he met his burden of proving that counsel caused him to plead guilty by incorrectly advising him that he could be convicted of third-degree murder with proof of only "mere recklessness," a negligent act, or a merely reckless car crash that causes the death of another?

2. Did the PCRA court abuse its discretion when it denied [Appellant's] timely motion to amend his petition where the proposed amendment would have demonstrated that plea counsel provided materially false testimony at the PCRA hearing to avoid a finding that she provided ineffective assistance?

Appellant's Brief, 3 (suggested answers omitted).

In his first issue, Appellant asserts the PCRA court erred by denying him relief on his ineffective assistance of counsel claim alleging that erroneous legal advice improperly induced him to enter his guilty plea. **See** Appellant's Brief, 10-29. Citing cases where defendants entered guilty pleas based on counsel's advice that improperly instructed them on their sentencing outcome or pre-trial rights, Appellant asserts that he is similarly entitled to relief. **Id.** at 11-13, **citing Commonwealth v. Barndt**, 74 A.3d 185 (Pa. Super. 2013); **Commonwealth v. Rathfon**, 899 A.2d 365 (Pa. Super. 2006); **Commonwealth v. Thomas**, 506 A.2d 420 (Pa. Super. 1986).

As for the existence of the incorrect advice, Appellant points to his evidentiary hearing testimony alleging that plea counsel had "said any car accident that results in death would be third-degree murder based off of mere recklessness." Appellant's Brief, 17-18, **quoting** N.T., 8/28/23, 70-71, 83.

- 17 -

He also refers us to his testimony that the advice at issue was made to him "personally and via an email that [plea counsel] sent to his parents[,] which was in turn sent to him." Appellant's Brief, 18. He asserts that his evidentiary hearing testimony demonstrated that plea counsel advised him that he could be convicted of third-degree murder "with proof of only mere reckless or evidence of a merely reckless car accident." *Id.* at 18-19. As for the alleged incorrect advice offered "via an email," Appellant directs us to his parents' testimony addressing the December 10, 2020, and March 13, 2020 emails between plea counsel and his parents. Appellant's Brief, 19-22. Given the credibility and legal findings of the PCRA court, we are unable to agree with Appellant that he is entitled to relief.

"Our standard of review of a [PCRA] court order granting or denying relief under the PCRA calls upon us to determine 'whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.'" *Commonwealth v. Pier*, 182 A.3d 476, 478 (Pa. Super. 2018), *quoting Barndt*, *supra*, 74 A.3d at 192. Additionally, our Supreme Court has noted that reviewing Courts are bound by the PCRA court's credibility findings:

> [T]h[e appellate] Court is bound by the [PCRA] court's credibility determinations, unless those determinations are not supported by the record. The credibility determinations are to be provided great deference, and indeed, they are one of the primary reasons PCRA hearings are held in the first place. Moreover, we must conduct our review in the light most favorable to the prevailing party, in this instance, the Commonwealth. Given that the PCRA court, as fact-finder, has the opportunity to listen to witnesses, to observe

- 18 -

their demeanor and attitude, we have stated that there is no justification for an appellate court, relying solely upon a cold record, to review the fact-finder's first-hand credibility determinations.

*Commonwealth v. Rizor*, 304 A.3d 1034, 1058 (Pa. 2023) (internal citations, quotation marks, and brackets omitted).

Upon reviewing an ineffective assistance of counsel claim, we must presume that counsel was effective, and it is the burden of the PCRA petitioner to prove otherwise. *See Commonwealth v. Holloway*, 739 A.2d 1039, 1044 (Pa. 1999). To prevail on an ineffectiveness claim, the PCRA petition must plead and prove all of the following: (1) the underlying claim is of arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate his or her client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. *See Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987); *Strickland v. Washington*, 466 U.S. 688 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." *Commonwealth v. Basemore*, 744 A.2d 717, 738 n.23 (Pa. 2000).

Moreover, it is well settled that

[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

***Pier***, 182 A.3d at 478-79 (footnote and citation omitted). "Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." ***Barndt***, 741 A.3d at 192 (internal quotation marks and citation omitted).

Appellant alleges that his plea counsel improperly advised him on the nature of third-degree murder by suggesting that its commission would be satisfied by mere recklessness in the absence of malice, both through direct consultation and through emails that counsel had sent to his parents and which his parents then shared with him. We observe that the PCRA court found Appellant's testimony on that matter to be incredible and instead credited plea counsel's testimony that she properly advised Appellant. ***See*** PCRA Court's Opinion, 6/6/24, 14 ("Testimony from the guilty plea and evidentiary hearing confirmed that counsel accurately defined malice and advised Appellant that the Commonwealth's evidence was sufficient to establish it.").

Appellant asks us to reject the PCRA court's credibility determination concerning the advice that plea counsel directly provided to him because counsel was the author of the emails to his parents that separately contained erroneous advice. ***See*** Appellant's Brief, 27-28 ("Counsel's PCRA testimony denying giving incorrect advice appears subjectively self-serving because it cannot be reconciled with her own emails or the testimony of Mr. Campbell

and his parents."). We cannot do this since the PCRA court's credibility findings are supported by the record. ***See Rizor***, ***supra***; ***see also*** N.T., 8/23/23, 130-32 (plea counsel discussing her advice to Appellant concerning malice element of third-degree and how jury may interpret his acts leading to death of collision victims as proof of malice). Further, this line of argument is unpersuasive because the inclusion of incorrect advice in counsel's written correspondence to his parents does not necessarily lead to the conclusion that counsel incorrectly advised Appellant in their direct consultations because, as counsel explained in her PCRA hearing testimony, the written correspondence was meant to address questions that Appellant's mother had, with the intention of conveying the information to the mother, for whom English was not a first language, and counsel instructed that those communications should not be shared with Appellant. ***See*** N.T., 8/28/23, 139-40.

As to Appellant's argument that plea counsel indirectly offered him incorrect advice through the written emails to his parents, as intermediaries, we are not bound by any credibility determination because the PCRA court's rejection of that theory was determined by legal conclusion. ***See*** PCRA Court Opinion, 6/6/24, 12 ("The statements made to Appellant's parents are immaterial and do not have a bearing on Appellant's ineffective assistance of counsel claim."). As to that conclusion, we apply a *de novo* standard of review. ***See Commonwealth v. Miranda***, 317 A.3d 1070, 1075 (Pa. 2024).

Before addressing the content of counsel's emails and their possible influence on Appellant's decision to plead guilty, we note that neither

- 21 -

Appellant, in his brief, nor the PCRA court, in its opinion, refer us to any caselaw addressing a factual scenario where a defendant has alleged that he was misadvised by an attorney's advice to a third party which was then filtered back to the defendant through that third party. Here, the PCRA court's legal conclusion does not appear to convey that it was a legal impossibility that incorrect advice from an attorney to a third party can cause a defendant to tender an involuntary plea in the event the third party conveys the incorrect legal advice back to the defendant. The PCRA court's holding is simply that the emails — even assuming *arguendo* that they contained erroneous advice — had no bearing on the Appellant's decision to plead guilty because, in any event, counsel properly conveyed correct legal advice to him on the information at issue, and the record supported the notion that he was properly advised of, and aware of, the nature of his lead offense at the time he entered his plea. ***See*** PCRA Court Opinion, 6/6/24, 12 ("Ultimately, if Appellant knew the elements of the crime, it does not matter whether his parents understood them."). On that point, we agree with the PCRA court's analysis.

Here, the alleged sources of incorrect advice were the emails, dated March 13, 2020, and December 10, 2020, from plea counsel to Appellant's father, asserting that mere recklessness causing a car accident was sufficient evidence for third-degree murder, and the Supreme Court of Pennsylvania had issued caselaw to that effect. ***See*** Motion for Leave to Amend PCRA Petition, 8/6/23, Attached Email from Plea Counsel to Father, 3/13/20, ¶ 7 ("… your wife indicated she does not agree that this is 3rd degree murder, but I think

- 22 -

she is somewhat confused as to what 3rd degree murder under the law requires[,] it is any 'reckless or negligent act by a person that causes the death of another.'"); Memorandum of Law, 8/16/22, Attached Email from Plea Counsel to Father, 12/10/20, ¶ 3 ("Third[-]degree murder does not require an INTENT; it requires mere RECKLESSNESS") (emphasis in original); *id.* at ¶ 11 ("The Supreme Court has found that when there is an automobile accident with reckless[,] it is 3rd degree murder.").

The isolated statements in those emails about mere recklessness alone supporting the *mens rea* element for third-degree murder in cases where automobile collisions result in a death are inaccurate characterizations of Pennsylvania law. Instead, malice is the constituent element for third-degree murder, and "[w]here malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury." *Commonwealth v. Kling*, 731 A.2d 145, 147-48 (Pa. Super. 1999); *accord Packer*, *supra*, 146 A.3d at 1285 (quoting *Kling*); *Commonwealth v. Peters*, 320 A.3d 1231, 1237-38 (Pa. Super. 2024) (*en banc*) (quoting *Packer*'s restatement of *Kling*).

Plea counsel testified that the wording of her emails was chosen to convey information to Appellant's mother who did not use English as "her first language," N.T. 8/28/23, 139, and that the emails with Appellant's parents were part of "an ongoing conversation … to get the parents to understand the

difference between specific intent … and what murder is and the lesser included offenses that can constitute murder in the State of Pennsylvania." *Id.* at 152. At the same time, counsel conceded at the PCRA hearing that the language in the emails to the parents about mere recklessness supporting third-degree and related Pennsylvania Supreme Court caselaw were misstatements of law when read in isolation. *See id.* at 152 ("Q. Okay. But you did give -- the sentences that I read in the March 13, 2020 e-mail and the December 10th, 2020 e-mail, you do agree that that's not the definition of what third-degree murder is? A. Sure."); *id.* at 153 (exchange about assertion that "The Supreme Court has found that when there is an automobile accident with reckless it is third-degree murder" in the emails: "Q. Is it fair to say that that is not an accurate narration of what Pennsylvania law is? A. Sure.").

From this concession about the emails from plea counsel, we can glean, consistent with the PCRA court's credibility findings, that while counsel was correctly advising Appellant on the nature of third-degree murder charges in her direct consultations, counsel had inadvertently created a pathway of second-hand incorrect legal advice which filtered to Appellant through his parents. In support of the existence of that pathway, Appellant also proffered an email reflecting that his parents informed counsel that they were going to share the December 2020 email with him. *See* Motion for Leave to Amend PCRA Petition, 10/19/23, ¶¶ 3-6; *see also id.*, attached Email from Appellant's Father to Attorney Rogers, 12/10/20 ("I will copy your email and

mail it to Keith."). Even with the existence of that possible source of inaccurate advice that could have had some influence on Appellant in his case, the record nevertheless supports the PCRA court's finding that the emails to Appellant's parents did not cause Appellant to enter an unknowing or involuntary guilty plea.

The testimony of plea counsel, deemed credible by the PCRA court, reflected that Appellant received legally sound advice on the nature of his third-degree murder charges in his direct consultations with counsel. Counsel addressed the malice element for the offense with him and shared caselaw with him suggesting that third-degree murder was an appropriate charge under similar factual scenarios. *See* N.T., 8/28/23, 130. Counsel made clear that she properly defined malice for Appellant, consistent with her October 2020 meeting agenda (which was not disputed to be incorrect) and testified that "[m]alice was something [they] talked about *ad nauseam*." *Id.* at 130-31, 143; Appellant's Brief, 28 ("Admittedly, the agenda accurately defines third-degree murder."). Based on her discussions with Appellant, plea counsel testified that she had no reason to believe that Appellant misunderstood the elements of third-degree murder and the "nature of malice" in his case. N.T., 8/28/23, 137.

Given that the PCRA court deemed Attorney Rogers' testimony credible, we are bound to find that counsel correctly advised Appellant regarding malice. As to the question of whether Appellant demonstrated a reasonable probability that the second-hand incorrect legal advice caused him to enter an

unknowing plea, Appellant needed to demonstrate to the PCRA court that the three sentences at issue in the emails caused him actual confusion regarding the *mens rea* element of third-degree murder or caused him to ignore the correct legal advice offered him in at least ten separate face-to-face meetings. **See** N.T. 8/28/23, 125. On this record, we cannot agree that the PCRA court's finding of lack of prejudice is either not supported by the record or erroneous.

First, when Appellant confirmed his understanding of the malice element in his oral guilty plea colloquy, he agreed that he did not have any questions for the court concerning the elements of his charges. **See** N.T. 2/9/21, 14. The absence of any questions for the plea court suggested that there was no actual confusion about the nature of the third-degree murder charges and little reason to think that the stray emails from his parents caused him to even question, let alone ignore, the wholesale advice of his attorney.

Second, "[t]he desire of an accused to benefit from a plea bargain is a strong indicator of the voluntariness of his plea." *Commonwealth v. Pollard*, 832 A.2d 517, 524 (Pa. Super. 2003). Here, the fact that the negotiated plea agreement allowed Appellant to avoid the possibility of facing a mandatory life sentence in the event of multiple third-degree murder convictions, while not dispositive of Appellant's actual knowledge of the elements of his charges, strongly suggested that his decision to enter the plea was not made in a capricious manner such that Appellant had actually ignored the advice in which plea counsel directly informed him of the nature of the malice element for third-degree murder.

Lastly, Appellant fails to refer us to any relevant caselaw from which we can find ineffectiveness based on a third-party's communication of incorrect advice from a defendant's attorney when there is already a credibility finding that the same attorney offered legally sound advice to the client in direct communications. We are unaware of any caselaw that would suggest that the PCRA court should have inferred that a second-hand source of incorrect legal advice from an attorney should take precedence over the attorney's direct communication of legally correct advice on the same point. On that basis, we have no grounds to find a legal error with the PCRA court's denial of the ineffectiveness claim.

The totality of the circumstances suggests that Appellant entered a knowing and voluntary guilty plea and was properly informed of the nature of his third-degree murder charges based on his former attorney's direct communication of legally correct advice concerning the nature and elements of his charges. We find no basis to upset the PCRA court's conclusion that Appellant failed to overcome the presumption of the effectiveness of his former counsel and demonstrate that his former counsel caused him to enter an unknowing or involuntary plea.

In his second issue, Appellant asserts that the PCRA court abused its discretion by denying his motions to amend his PCRA petition which proffered the emails which are addressed in his first issue. *See* Appellant's Brief, 36-39. Appellant does not address any orders specifically denying his motions to amend his petition, but the PCRA court advises in its Rule 1925(a) opinion

that it considered the amendments and the absence of a docket entry concerning the granting of the amendments was the result of a clerical error. As the PCRA court's brief discussion of this claim reflects that there was no denial of the amendment requests, there is no need for further review of this claim to evaluate an abuse of discretion with respect to Pa.R.Crim.P. 905. **See Commonwealth v. Brown**, 141 A.3d 491, 504 (Pa. Super. 2016) (noting that PCRA court implicitly permits amendment under Rule 905(A) when it does not strike supplement to PCRA petition and considers supplement when it addresses petitioner's arguments).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/5/2025